## HARRELSON *v.* STATE.

June 8, 1953

No. 38657        34 Adv. S. 89        65 So. 2d 237

*W. I. Stone* and *Kermit R. Cofer,* for appellant.

*Joe T. Patterson,* Assistant Attorney General, for appellee.

ARRINGTON, J.

The appellant, Glenn Harrelson, was convicted of the murder of his wife, and the jury being unable to agree upon the punishment, he was sentenced by the court to a life term in the penitentiary, and from this judgment he appeals.

The record discloses that the appellant's wife died as a result of a wound inflicted upon her by a bullet from a .22 rifle in the hands of the appellant. The killing took place in appellant's home on Saturday afternoon, May 26, 1951, in the presence of their child, a boy two years

of age. According to the appellant's testimony, he had been down on the creek with friends shooting the rifle, and it snapped. Upon returning home, he took the gun apart to see what caused it to snap; he took his knife and struck the gun a couple of times, and the gun fired, killing his wife who was sitting in a chair nearby. Upon the arrival of appellant's mother and neighbors after the shooting, his mother stated that appellant was "messing with the gun and it went off," and the appellant said: "I don't know how it happened." Upon being questioned by the officers on the afternoon of the killing, the appellant said that he was not in the room at the time of the shooting and "he reckoned his child must have done it." The following Wednesday the officers again questioned the appellant with reference to the shooting, the sheriff telling him that he did not believe the two-year-old child shot his wife. The appellant then admitted that he did the shooting himself. When asked why he did not state this in the beginning, he said that the people would not believe him for the reason that they did not like him.

The appellant, testifying in his own behalf at the trial, admitted that he made conflicting and false statements as to the killing. His explanation was that he was upset and scared, that he did not intentionally kill his wife but that it was an accident.

The appellant's main assignment of error argued is that the court erred in refusing a requested peremptory instruction on the ground that the appellant was the sole surviving witness to the homicide, that his testimony that the killing was accidental was reasonable and must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by facts of common knowledge, citing Weathersby v. State, 165 Miss. 207, 147 So. 481, and Barclay v. State, 43 So. 2d 213. We are of the opinion that the above rule is not applicable here. Grady v. State, 144 Miss. 778, 110 So. 225; Pitts v. State,

211 Miss. 268, 51 So. 2d 448. We have carefully examined the record and find that although this is a close case on the facts, the court committed no error in submitting it to the jury.

There are other assignments of error argued which will not be discussed, since this case will have to be reversed and remanded for a new trial because of the admission of improper evidence.

The court, over the objection of the appellant, permitted the witness, Jess Yancy, Sheriff, who saw the appellant at the funeral home on the afternoon of the killing, to testify as follows:

"Q. When you first saw him, state whether or not the defendant was showing any signs of grieving?

"Objected to, that calls for an opinion. By the Court: I think he can answer that.

"A. He was not.

"Q. What expression did he have on his face?

"Objected to. By the Court: Overruled, he can tell how he looked.

"A. He was sitting in a normal position with a normal expression on his face."

Mr. Inman, the Marshal of Bruce, who was with Sheriff Yancy at the funeral home, also gave the following testimony over the objection of the appellant:

"Q. I will ask you whether or not you had an opportunity to see the defendant before he saw you?

"Objected to, we make the same objection to that as we did awhile ago.

"By the Court: He can tell if he did.

"A. Momentarily we did.

"Q. Did you or not notice any signs of grief?

"A. I did not.

"Q. What was the signs on his face?

"Objected to. By the Court: Overruled.

"A. I would say normal. He was sitting in the chair in an upright position as we entered. There was two

doors in the office and we came in this door here, (indicating) and he was over here in the corner in a rocking chair. We saw him before he saw us.

"Q. What did he do when you walked in?

"A. He saw us and he did like this, (which is covering his face with his hand)."

Upon cross-examination:

"Q. What made you say he looked normal?

"A. He was not frowning and not laughing,—he looked like a mad man.

"Q. You say he didn't look normal because he looked like a mad man?

"A. He could have had that expression on his face, (that is what I intended saying), if he was not normal, he could have been happy or mad. There was a shade there."

The evidences of lack of grief are not stated. The opinion of the officers, we assume, was based on the fact that the appellant was not visibly manifesting what the witnesses considered signs of grief. The reactions of a person to sorrow or grief vary with the individual. It is a matter of common knowledge that some people undergo sorrow or bereavement with composure. Opinions as to what constitute evidences of grief also vary with the individual.

The general rule is that opinion evidence is not admissible except that of an expert. The demeanor acts and conduct of an accused, at the time and subsequent to the crime are admissible. However, this should be limited to a statement of the facts by the witness or witnesses, leaving the jury free to form its own conclusions. The admission of the opinion of the officers who investigated the killing that the appellant showed no signs of grief, over the objection of the appellant, was improper and highly prejudicial. The opinion of the sheriff, a prominent official of the county, that the appellant showed no signs of grief conveyed to the jury the impression that the sheriff thought the appellant was guilty, and it was calculated to, and undoubtedly did, influence the jury in

reaching its verdict. We are unable to say that the appellant in this case received a fair and impartial trial.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Holmes* and *Lotterhos, JJ.,* concur.