245 So.2d 583 (1971)
Will Allen SMITH
v.
STATE.
No. 46174.
Supreme Court of Mississippi.
March 1, 1971.
Rehearing Denied March 29, 1971.
*584 David H. Nutt, Prewitt & Braddock, Vicksburg, for appellant.
A.F. Summer, Atty. Gen., by John M. Kinard, Special Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
Will Allen Smith was convicted in the Circuit Court of Warren County upon an indictment charging him with the murder of Mildred Mae Glidewell. By its verdict the jury fixed his punishment at life imprisonment and accordingly he was so sentenced by the court. From that conviction and sentence he appeals.
The case is here for the third time. On appeal from the first conviction this Court reversed and remanded the case for a new trial. The opinion of the Court is reported as Smith v. State, 198 So.2d 220 (Miss. 1967). Upon retrial following that reversal, appellant was again convicted. Again he appealed and again this Court reversed and awarded a new trial. The opinion of the Court on the second appeal is reported as Smith v. State, 220 So.2d 313 (Miss. 1969).
The present appeal is from appellant's third conviction on the charge. Upon each of his three trials, appellant's defense has been insanity at the time of the commission of the homicide. It is not contended that he was mentally incapable of standing trial. As on his two former appeals, appellant challenges the sufficiency of the evidence to support the jury's verdict. Two of the three assignments of error relate to this alleged deficiency. The first of these assignments is to the effect that the trial court was in error in overruling appellant's motion for a directed verdict made at the close of the evidence offered in chief by the prosecution. The second is that the verdict was against the overwhelming weight of the evidence.
The facts of the homicide are set forth in considerable detail in the two former opinions of this Court, already mentioned, and will not be repeated here at length. It is enough to say that there is no question whatever that appellant shot and killed the decedent, a woman with whom he was enamored. Moreover, it is clear from the undisputed evidence in the record that the killing was premeditated and was murder, unless, at the time, appellant was insane. No defense other than insanity was interposed or suggested.
The record reflects that appellant was in love with the woman he killed, that he desired to marry her and that she had led him to believe and to expect that she intended to marry him. Appellant was older than Mildred Mae Glidewell, had been giving her money and other valuable gifts and was in the course of assisting her financially in obtaining a divorce from her husband in order that they might carry out their plans and be married. Three days before the homicide this woman informed appellant that she had changed her mind, would not marry him, and, in fact, was going to marry another man. On the day of the homicide appellant placed a pistol in a paper bag and drove to the restaurant where this woman worked as a waitress. Arriving there, he entered and *585 had a conversation with a friend while he drank a coca cola. At that time the restaurant was crowded. He and the friend went out of the restaurant, stopped in front, and continued to converse with each other. At this time appellant seemed somewhat preoccupied and nervous and more talkative than usual. Meanwhile the restaurant cleared. Appellant went to his car and took from it the paper bag containing the pistol. Reentering the restaurant he walked up to the woman as she stood behind the counter and said to her "Mildred, I hate to do this," shooting her several times and killing her instantly. He then left the restaurant and drove to the county courthouse, where he told the officers what he had done and surrendered himself to them. At this time he was in a highly emotional state obviously overcome with remorse, and expressing a wish that he might be executed immediately for his crime.
At the conclusion of the state's case appellant's motion for a directed verdict was made and overruled. He then proceeded with his defense. Two psychiatrists testified for appellant as experts and stated that in their opinion he had been insane at the time of the shooting. After appellant had rested and closed, in rebuttal the state called a psychiatrist who was a member of the staff of the Mississippi State Hospital (for the insane) where the appellant had been sent for examination. This witness testified as an expert regarding the hospital staff's examination of the appellant and its findings with respect to his mental condition. When the state had rested and closed its case appellant's motion for a directed verdict of not guilty was not renewed.
Appellant's contention that the evidence was insufficient to support the verdict has been made and has been rejected by this Court on each of the two former appeals. The thrust of appellant's argument on this point is that the jury was bound to accept the expert opinions of the two psychiatrists who testified for him upon the issue of insanity. The opinions of these experts were, of course, competent and relevant to the issue. However, uncontradicted evidence before the jury acquainted the jurors with the conduct of the appellant before, at the time of, and subsequent to the homicide. In the context of appellant's relationship with the woman he killed, and in the light of evidence of his having been cast off by her in favor of another man, the evidence was more than ample to support a finding by the jury that appellant's act was motivated by jealousy and affronted vanity. These have been classic motives for murder since the dawn of recorded history and bring the case within a well known pattern of human behavior. But neither has been considered as excusing or justifying homicide. Appellant's preparations for the homicide show clearly a premeditated and reasoned design. In carrying it out, particularly the bringing of the pistol into the restaurant concealed in the bag after waiting for the restaurant to clear, his remarks and conduct before and at the time of the shooting, reflect an understanding of the wrongful or illegal character of his act. This is strongly supported by the fact that he subsequently sought out the officers and surrendered himself to them. His emotional state and expressions of remorse also support the view that he knew the nature and consequences of his act and knew that it was wrong. It was the prerogative of the jury, and it was its duty, to consider all of this evidence. The jury was not deprived of the right to use common sense or of applying the lessons of human experience in resolving the question of whether the appellant had or had not appreciated the nature and consequences of his act and had or had not known that it was wrong. The expert opinions of the psychiatrists were not conclusive upon that issue.
In Kearney v. State, 224 Miss. 1, 12, 79 So.2d 468, 473 (1955) this Court said:
[W]hile it is true that aside from the statement of the sheriff that he believed *586 that the defendant knew what he was doing that night, no witness for the State would express an affirmative opinion on the issue of whether the defendant knew right from wrong on the occasion of the shooting. However, they did relate facts and circumstances which occurred at or about the time of the shooting that would amply warrant a jury in finding that the defendant was angry with his wife and that he shot her pursuant to a premeditated design with the conscious intent to kill and murder her, and then shot Esther Hill, an eyewitness.
We have carefully considered all of the evidence, and while the case is not without difficulty on the question of the weight of the evidence as to the mental condition of the defendant, we have concluded that this issue was one peculiarly for the determination of the jury. We are unable to say that the verdict was against the overwhelming weight of the evidence on that issue.
Appellant proceeded with his defense after his motion for a directed verdict, made at the conclusion of the state's case in chief, had been overruled. This motion was not renewed following the state's completion of its rebuttal evidence, nor after both sides had rested and closed. In Kearney v. State, supra, in a similar situation this Court said:
When the motion which was made at the time the State rested its case in chief was overruled, the defendant proceeded with his defense by the introduction of the testimony of three physicians, and also by the testimony given by him in his own behalf in support of his defense of insanity, together with the testimony of other witnesses to the effect that he had previously borne a good reputation for peace or violence. Therefore the question of whether or not the defendant was entitled to the requested peremptory instruction is to be determined on the state of the testimony at the conclusion of all the evidence offered both by the State and the defendant. * * * (Emphasis added). (224 Miss. 1, 4, 79 So.2d 468, 469).
In the case of Ross v. State, 234 Miss. 309, 311, 106 So.2d 56, 57 (1958) this Court said:
Appellant asked for a directed verdict after the State had closed its case. It was denied, and he then introduced two witnesses. After that he did not ask for a peremptory instruction. It is well settled that a defendant waives his motion for a directed verdict made after the State's case, where he then introduces evidence in his behalf. Kearney v. State, 1955, 224 Miss. 1, 79 So.2d 468; Illinois Cent. R.R. Co. v. Perkins, 1955, 223 Miss. 891, 915, 79 So.2d 459. (Emphasis added).
Nevertheless, we have carefully reviewed the evidence and are convinced that a factual issue as to appellant's sanity was presented which the trial court properly submitted to the jury. Moreover, the evidence was sufficient to support the jury's verdict of guilty.
The final point urged for reversal by appellant is described as "inflammatory argument" by the county attorney to the jury. No request was made that the argument of counsel be taken down or recorded and consequently it does not appear in the record. The remark criticized was as follows:
When violence is so prevelent [sic] across this nation, and being committed daily upon our streets, we should be careful of extending sympathy to a person who has committed a crime.
This isolated remark appears in a bill of exceptions. The trial judge commented upon it as follows:
The statement attributed to the County Attorney is basically correct, though not verbatim. The County Attorney addressed the jury for thirty-two minutes (each side having been allotted one hour for argument, which time was agreed by both *587 sides to be ample), and I might say that I considered the text of his argument to be sound, solid, and in full keeping with judicial, ethical, and constitutional standards. He stayed within the record in every respect. The statement, of course, is taken entirely out of context, and constitutes a minute portion of rather lengthy argument which otherwise was conservative and quite able. When this statement was made, and objection and motion were proffered by counsel for Defendant, on the thought that it might conceivably be prejudicial, the Court promptly sustained the objection and advised the jury to disregard this particular phase of the argument. In addition to this, the County Attorney was specifically admonished to desist from this type of argument. The Court, however, overruled the Motion for Mistrial, inasmuch as it was not felt that the transgression, if any, justified the granting of a mistrial.
This remark apparently was made in the opening argument for the state. Since we are unable to consider the quoted language in the overall context of the argument, it is impossible to say that it was so prejudicial that the trial court's instruction to the jury that they should disregard it was ineffective or failed to cure its harmful effect, if any. Jones v. State, 223 Miss. 812, 79 So.2d 273 (1955); Crawford v. State, 223 Miss. 189, 77 So.2d 923 (1955); Richey v. State, 220 Miss. 790, 72 So.2d 152 (1954); Pitts v. State, 211 Miss. 268, 51 So.2d 448 (1951); Jackson v. State, 94 Miss. 83, 47 So. 502 (1908).
We find no reversible error in the record and the judgment appealed from is affirmed.
Affirmed.
ETHRIDGE, C.J., GILLESPIE, P.J., and RODGERS, and BRADY, JJ., concur.