This is an appeal from a conviction of murder after a jury trial in the Circuit Court of Jefferson County, Mississippi. Appellant was sentenced to life imprisonment.
The sole issue is whether the jury was justified in finding the defendant understood the nature and quality of the act he was doing and was able to distinguish between right and wrong at the time of the murders. The facts with regard to the occurrence of the murders are uncontradicted.
Sometime between the evening of February 17, 1974 and the early morning hours of February 18, 1974, Frankie Lee Lias shot and killed his wife, daughter, sister-in-law and brother-in-law.[1]
The only defense argued was that of insanity. This defense was predicated primarily on the testimony of a psychiatrist from the Mississippi State Hospital at Whitfield. He testified that in his opinion Lias suffered from paranoid schizophrenia and could not tell right from wrong at the time the crime was committed. Additionally, it was stipulated that another psychiatrist from Whitfield would testify to the same effect if called as a witness. Other testimony by lay persons indicated Lias professed to be deeply religious, had adopted the nickname Black Moses, and professed to be able to communicate with God. According to his brother and another relative, on the night of the crime, Lias stated "The Lord told me to come to him and bring all those around me."
The state presented no medical expert testimony on the issue of sanity, other than the statement by the medical doctor who had pronounced the victims dead, that a day or two after the crime he saw Lias in jail and Lias appeared "solemn and remorseful." There was however lay testimony and other documentary evidence. The three lay witnesses presented in the case were defendant's two brothers and a life-long acquaintance. All three testified both for the state and for defendant. William Lias testified that on the night of the crime, Frankie appeared at his trailer driving his mother-in-law's car. He stated that Frankie had a .22 rifle in his possession and when he asked for the rifle Frankie refused, stating that the rifle had blood stains on it and he had just "blooded Hairston with it."[2]
Martin Lias testified that when he arrived with the two deputy sheriffs who arrested Frankie, Frankie told the deputies he had already been to the sheriff's office to surrender but that the office was closed. He further testified that he had no trouble communicating with Frankie on the night of the occurrence, that he understood Frankie and vice versa.
Dolores Jean Brown testified that on the night in question William Lias came to her home to use the telephone because Frankie had had a disturbance with his in-laws. Later she testified that on the same night *Page 200 
Frankie told her "I've been into it with my neighbors, with my family, in-laws." He then told her he killed all except one, Francesca. Most significantly at that time, Frankie asked her to call the sheriff to come get him the next morning. Finally, like Martin Lias, she testified Frankie was able to carry on a regular conversation. When asked if he was fully coherent and fully capable of talking to her and understanding her conversation, her reply was, "Seemed to be."
Other witnesses corroborated that Frankie stated he had gone by the sheriff's office earlier to surrender. Deputy Stringer testified that Frankie told him how to get into one of the homes where the murders occurred, i.e., through the same window Frankie used. Sheriff Wallace who had known the defendant for six to ten years previously testified that on the night involved Frankie appeared normal except that he was slightly nervous.
The final significant document which was given by Frankie to the sheriff at the time of his arrest was a handwritten "confession." The document stated:
 CONFESSION:
 February 17, 1974 Sunday 2:01 p m
 To Whom It May Concern:
 Dear God,
 I love you, and if I havn't [sic] been living a desent [sic] life, I expect to pay for my mistakes. Father I wanted to live a happy life and I also wanted to make people happy. And as I pass alone [sic] if I can cheer somebody with a word or a song then my living would not be in vain. Farther [sic] I know I've done wrong things in my life, some was to benifit [sic] me and some was to benifit [sic] others. Farther [sic] I've always asked and belived [sic] in you. Farther [sic] you've showed me my death many times. I believe what you showed me. Maybe I'm one of a kind but I can't feel sorry for anyone not even my self. I remember seeing my Mother's death a few times, but every time I cried as [sic] begged you to let it be me instead. Well it really doesn't matter now, it really doesn't matter what happens now, because I lived my life. I don't even live for the future I only live for the present. I don't have any friends, because they all have betrayed me but still I go on treating them like they are outstanding. Well when I have to meet my day I don't want a long funeral and if and who delivers the news, I don't want them to talk too long. Pleas [sic] don't give me flower [sic]. I don't want a flower. I don't want anyone to weep for me. Theres [sic] a verse I once heard, rejoyce [sic] to the income and joyce [sic] to the outgo. The world owe me nothing and I owe the world nothing. Theres [sic] only two peoples [sic] in this world that I know and believed [sic] love me besides God, and that My Mother and Farther [sic]. After them you've got no one else to love you. I have two brothers that I'll be joining real soon. Let my body rest in Rose Hill Cemitery [sic] beside by brothers. Please tell my mother, weep not for me, but for those that are around her. When I've done the best I can, and I can't do no more, I ask you God, Please, Please come and take me. Take me as I am, because I'm your servant. I'll like to go farther, I'll like to say something about my family. I loved them very much cared for all of them then Saturaday [sic] morning about 9:20, 2-16-74, my Wife Carol Eve told me that Kenyatta is not my daughter. That she's Dr.'s [sic] Reed baby. All that time after April 23rd she now tell me that. I wish Donna Carol, my little daughter grows up and live a different life from her mother. My mother Mrs. Lenora Lias asked me to let her adopt Donna, and now I'd like her to do that. I want my every body to be happy. Frankie Lee Lias.
 St. Matthew 21:32
 And Jesus stood still, and called them, and said, What Will ye that I shall do unto you?
 St. Luke 12:8
 Also I say unto you, whosoever shall confess me before men, him shall the son of Man also confess before the Angels of God. *Page 201 
 A-MEN.
 God I still love you, but you'll Never forgive me.
We have stated on several occasions that expert opinions of psychiatrists are not conclusive upon the issue of insanity but rather insanity is a question to be resolved by the jury.Hollins v. State, 340 So.2d 438 (Miss. 1976); Pounders v.State, 335 So.2d 904 (Miss. 1976); Myrick v. State,290 So.2d 259 (Miss. 1974); Jones v. State, 288 So.2d 833 (Miss. 1974);Blackwell v. State, 257 So.2d 855 (Miss. 1972); Smith v.State, 245 So.2d 583 (Miss. 1971); and Kearney v. State,224 Miss. 1, 79 So.2d 468 (1955). See Williams v. State,354 So.2d 266 (Miss. 1978). We do not retreat from that position.
On the other hand, in each case we have reviewed the record to determine if the state's evidence was sufficient to support a finding by the jury of sanity beyond a reasonable doubt, and have reversed the case where no such sufficiency existed. Holloway v.State, 312 So.2d 700 (Miss. 1975); Gambrell v. State,238 Miss. 892, 120 So.2d 758 (1960).
The instant record presents a close question of fact with a psychiatrist testifying that in his opinion, the defendant was unable to distinguish right from wrong at the time of the crime. Balanced against this is testimony of laymen who knew the defendant both before and after the crime and had opportunity to personally observe him before and after the crime. While admitting the closeness of the factual determination, we also acknowledge that such determination is the purpose for which juries exist. We are unwilling on an appeal to overturn a jury determination unless such determination is unsupported by the facts.
Here, the state's theory of the case was that the murder was a planned, deliberate and purposeful slaughter based on a revenge motive. The handwritten confession alludes to the wife's infidelity and the defendant's awareness shortly before the crime that his baby daughter was not his but that of another man. The defendant's own actions and responses made on the night in question indicate an awareness of what he was doing and the wrongfulness of the act. He related to two witnesses that he had attempted to turn himself in to the sheriff but the office was closed. He asked another witness to call the sheriff "in the morning." Furthermore, the handwritten "confession" itself indicated a knowledge of wrongdoing in its conclusion, "God I still love you, but you'll never forgive me." William Lias, his own brother, stated that the defendant knew the meaning of sin. Further, shortly after the time of the crime he was aware that he had "blooded Hairston," and that the rifle he held was loaded and lethal.
As to the psychiatric testimony, it is conceded that the doctor's opinion that defendant was insane and could not tell right from wrong was clear and unequivocal. However, the jury also had before it the benefit of cross-examination of the doctor where he admitted that an attempt to "turn oneself in" is evidence of knowledge that the person has done something wrong. The state also put forth the theory that the insanity could have been induced by the incident rather than preexisting the crime, to which possibility the psychiatrist agreed. It was also noted in the presence of the jury that the psychiatric examination necessarily occurred after the crime had been committed.
Based upon these considerations, we are unable to say the jury's determination was arbitrary or against the overwhelming weight of the evidence. Particularly where, as here, the determination of sanity was expressly made in writing by the jury.[3]
For the stated reasons, the case is affirmed.
AFFIRMED. *Page 202 
SMITH, P.J., ROBERTSON, P.J., SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C.J., specially concurring.
[1] The incident involved eight victims, seven dead, but the indictment in the instant case embraced only four.
[2] Hairston was the community where Frankie and his in-laws lived.
[3]
 "We the jury find the Defendant to have been sane at time of commission of the crime, and guilty as charged."