453 So.2d 695 (1984)
Roosevelt FROST
v.
STATE of Mississippi.
No. 54835.
Supreme Court of Mississippi.
July 25, 1984.
John T. Lamar, Jr., Lamar & Lamar, Senatobia, for appellant.
Bill Allain, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and BOWLING and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Early in the summer of 1981 Roosevelt Frost broke and entered the dwelling of an *696 elderly woman who lived alone. Later that summer, Frost entered the dwelling of another elderly woman who lived alone. Each incident occurred late at night. Each found Frost making unsolicited and wholly resisted sexual advances to his victim.
Frost has now been tried and convicted of burglary for each occasion and attempted rape for the second. He has been given an effective aggregate sentence of 20 years in the custody of the Mississippi Department of Corrections.
Frost's sole defense at trial was his assertion that he was insane at the time he committed the acts in question. The issues presented on this appeal likewise arise out of the insanity defense.
Finding no error, we affirm.

II.

A.
On July 18, 1981, at some time between 2:30 and 3:00 a.m. Olivia Clayton, 73 years of age, was alone at her home on Austin Road in DeSoto County. Roosevelt Frost appeared unexpectedly, yanked the screen off the window and broke into her home. Frost threatened Ms. Clayton with rape and advanced toward her. A scuffle ensued, in the course of which Ms. Clayton grabbed a chair at the foot of the bed and hit Frost with it. Frost fled. Ms. Clayton called the police who arrived approximately an hour later.
Almost two months later a similar incident occurred in the same locality. Ms. Ella Sloan, also 73 years old, had just gone to bed. Suddenly the door to her room flew open and a man ran in and grabbed her and told her he was going to rape her and kill her. At trial she identified Frost as her assailant. Ms. Sloan resisted mightily as Frost pursued his felonious purpose. Her resistance was successful and Frost ultimately stumbled out of the house.
On September 14, 1981, Frost was arrested in connection with the Sloan burglary and attempted rape. The following day he confessed all.

B.
In November of 1981 Frost was formally charged in three separate indictments (1) with the burglary of the dwelling of Ms. Clayton in violation of Miss. Code Ann. § 97-17-21 (1972); (2) with the attempted rape of Ms. Sloan in violation of Miss. Code Ann. § 97-3-65 (1972); and (3) with the burglary of the dwelling of Ms. Sloan again in violation of Miss. Code Ann. § 97-17-21 (1972).
Prior to trial, Frost filed a suggestion of insanity in each case. He then filed a motion that the trial of the charges in all three indictments be consolidated. The motion to consolidate recited that Frost did not deny the acts charged but that all were committed at a time when he was legally insane. The motion further recited that
"This single defense is completely and equally applicable to these offenses in said causes. The trial of this case will require expert testimony from psychiatrists and psychologists in which testimony will be applicable to all defenses."
The state having interposed no objection, the motion for consolidation was granted.
The three consolidated cases were called for trial in the Circuit Court of DeSoto County, Mississippi on Monday morning, February 14, 1983. At the conclusion of the testimony, the jury returned a verdict of guilty as charged on all three indictments.
The Circuit Court sentenced Frost, then 26 years of age, to a term of ten years for the offense of the attempted rape of Ms. Sloan, ten years for the burglary of her dwelling, that sentence to be served consecutively to the sentence imposed for the attempted rape charge, and ten years for the burglary of the dwelling of Ms. Clayton, that sentence to be served concurrently with the ten year sentence imposed on the other burglary conviction.
This appeal has followed.

III.
Frost assigns as error the Circuit Court's ruling allowing a law enforcement officer *697 to testify regarding Frost's words of remorse stated in connection with his confession. Frost relies heavily on our decision in Harrelson v. State, 217 Miss. 887, 65 So.2d 237 (1953). Upon careful consideration, the Harrelson case is inapposite and the assignment of error is not well taken.
During direct examination of the law enforcement officer who took the incriminating statement from Frost, the following colloquy took place.
"Q. All right, do you have any recollection that's different from what shows on the statement?
A. Well, there were some comments that weren't put in there; some things, like, you know, he was telling he was sorry he did it, and I think he may have even had a tear in his eye.
Q. All right, sir, let me ask you about it. Did he show remorse then for what he had done?"
When counsel for Frost objected at this point, the Court sustained the objection  and correctly so. Defense counsel then moved for a mistrial. The Court overruled the motion holding that, where the insanity defense is raised, the Defendant's behavior at any time surrounding the events of the crime or during the period of time in issue is relevant. Objective manifestations of remorse are probative of M'Naghten[1] sanity. When direct examination of the witness was resumed, the following dialogue took place:
"Q. I believe the last question I asked you, Russ, was did the defendant show any signs of remorse? Go ahead.
A. Yes sir, he was  like I say, he was tearful, he was saying, you know, he was sorry that he did it; he didn't know why he did it and things of that nature were all throughout the statement. I just didn't see to write everything down word for word."
Frost's statement was then introduced into evidence without objection.
The above testimony is quite different from that found objectionable in Harrelson. Harrelson was a murder case. Defendant argued that the shooting was accidental and that his initial statement so indicated. During the direct examination of the sheriff, the prosecutor elicited the following answers:
"Q. When you first saw him, state whether or not the defendant was showing any signs of grieving?
(Objection)
A. He was not.
Q. What expression did he have on his face.
(Objection)
A. He was sitting in a normal position with a normal expression on his face."
Another witness testified that he did not see the Defendant manifest any signs of grief either. Neither witness for the state related any basis for their opinions that the Defendant was experiencing no remorse.
Acknowledging it to be a matter of common knowledge that some people undergo sorrow or bereavement with composure, the Court correctly reversed Harrelson's conviction. The Court held that lay opinion testimony unsupported by observed objective behavior was inadmissible.
This case is the other side of the Harrelson coin. Here the law enforcement officer described observable facts. Frost told him that he was sorry for what he had done. He shed a tear. Though such conduct certainly suggests remorse, the objective facts and not the suggestion of remorse are what are admissible. The witness may tell what he observed and, in this instance, may tell what he heard. He may not, of course, give an opinion as to what conclusions ought be drawn from his observations.
The insanity defense was not at issue in Harrelson. In Mississippi, of course, a person must be M'Naghten insane, i.e., unable to distinguish between *698 right and wrong, in order to be not guilty by reason of insanity. Laney v. State, 421 So.2d 1216, 1218-1219 (Miss. 1982). Actual expressions of remorse such as the ones at issue here would be probative of whether a Defendant knew the difference between right and wrong at the time he committed the crimes. For these reasons, the assignment of error is without merit.

IV.
We have carefully reviewed the evidence in this case to determine whether it supports the jury's verdict of guilty. That verdict, of course, in reality was a rejection of the insanity defense tendered by Frost.
In support of his insanity defense, Frost called two articulate and highly-skilled clinical psychologists. These were Dr. Stephen H. Allison of Memphis, Tennessee (and in association with the Regional Mental Health Center in Hernando, Mississippi), and Dr. William G. Johnson (who is associated both with the University of Mississippi Medical Center in Jackson and the Mississippi State Hospital at Whitfield). These two psychologists solidly stated opinions that Frost was suffering from serious mental disorders. The diagnosis given by each: schizophrenia, paranoid type.
The jury was also presented Frost's history of mental illness. In 1980, Frost and his wife had separated. When his wife filed for divorce, Frost experienced severe depression and was admitted to St. Vincent Hospital in Toledo, Ohio, where he was treated for approximately one month. His illness was severe enough to require shock treatments. In early 1981, Frost was admitted to St. Charles Hospital in Toledo for further treatment for his mental illness. Following his discharge from St. Charles he received drug therapy until early July. Shortly after he discontinued the medication (without physician's approval), Frost committed the Clayton burglary.
The evidence to the effect that Frost was sane  that is, that he knew the difference between right and wrong  came from three lay witnesses who had observed him in and around the DeSoto County jail. The net effect of the testimony of these individuals was that he was a well-behaved prisoner, gave no trouble, and knew the difference between right and wrong.
Clear rules of law governing our consideration of jury verdicts such as these on appeal are set forth in Groseclose v. State, 440 So.2d 297 (Miss. 1983); Lias v. State, 362 So.2d 198 (Miss. 1978); and Smith v. State, 245 So.2d 583 (Miss. 1971). Those cases recognize that lay testimony such as that received into evidence here may be credited by a jury. They recognize further that, even though the state may offer no expert psychiatric or psychological witnesses and, even though the expert testimony offered by the defense may be persuasive, a jury verdict of guilty based solely upon the lay testimony offered by the state must be upheld. 440 So.2d at 300-01; 362 So.2d at 201; 245 So.2d at 585-86. Here as in other cases we are without authority to order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Rule 5.16(1) and (2), Uniform Criminal Rules of Circuit Court Practice; Winters v. State, 449 So.2d 766, 771 (Miss. 1984).
There is in the record before us substantial credible evidence suggesting that, at the times in question, Frost was sane in the M'Naghten sense. The jury's verdict may not be disturbed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
NOTES
[1] M'Naghten's Case, 10 Clark & F. 200, 8 Eng. Rep. 718 (1843); Harvey v. State, 207 So.2d 108, 110-115 (Miss. 1968).