486 So.2d 1242 (1986)
Waddell LANEY
v.
STATE of Mississippi.
No. 56116.
Supreme Court of Mississippi.
March 19, 1986.
*1243 John E. Shaw, Kosciusko, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, DAN M. LEE and ROBERTSON, JJ.
WALKER, Presiding Justice, for the Court:
This case is before us for the second time. Appellant's conviction for capital murder and sentence of death was reversed and remanded by this Court in Laney v. State, 421 So.2d 1216 (Miss. 1982) for failure of the lower court to grant a new trial upon discovery that one of the jurors failed to respond to questions posed during voir dire. Upon retrial Laney was again convicted of capital murder for the killing of Deputy Sheriff Charles Smith and was sentenced to serve the remainder of his natural life in the custody of the Mississippi Department of Corrections. Hence, this second appeal.

FACTS
On January 12, 1981 Sheriff Costilow and Deputy Sheriff Smith of Montgomery County were called upon to serve a chancery court writ upon Laney and transport him to the Region Six Mental Health Clinic in Greenwood, Mississippi for an evaluation to determine whether or not he was in need of mental treatment. The officers, who were in uniform, drove to Laney's home located in the south east portion of Montgomery County. They drove in a blue police car equipped with lights on top and stars on the side of the door.
Upon arriving the officers parked the car, got out and walked onto the porch where they observed a padlock on the front door of Laney's home. Thinking Laney was not home they walked away from the house. Smith went to the north side of the house to look for Laney. As Costilow stepped off the porch and turned he saw *1244 Laney coming from behind the house with a kaiser (bush) blade in his right hand and a .22 caliber rifle in his left hand. Costilow approached Laney and informed him of the writ, which was in the police car, and the purpose of their visit. Laney told the officers he was on his own property and had not bothered anyone and the Lord had sent him out there to preach and that was what he was going to do. He told the officers he was not going to go with them.
As Laney walked past Costilow, Costilow turned and "he (Laney) wheeled around to his left real fast and started shooting". Costilow said Laney "... got real upset; real mad." Officer Costilow was wounded and Smith was fatally shot. Following the shooting Laney ran off into the woods. Shortly thereafter he was arrested by Officer Jerry Butler, a criminal investigator with the Highway Patrol. Laney offered to, and indeed did, lead the arresting officers to the location of the rifle used in the shooting.
Following a hearing on Laney's competency to stand trial and a finding that he was competent he was tried before a jury. That jury, after reviewing all testimony and evidence offered at trial, found him guilty of capital murder. A sentencing hearing was held and Laney was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved with the holding of the lower court he has perfected his appeal to this Court assigning as error in the court below:
I. THE FINDING THAT HE WAS COMPETENT TO STAND TRIAL;
II. THE FINDING, BASED ON THE EVIDENCE, THAT HE WAS NOT M'NAGHTEN INSANE AT THE TIME THE CRIME WAS COMMITTED; AND
III. THE COURT'S REFUSAL TO GRANT SIX OF THE INSTRUCTIONS OFFERED BY HIS COUNSEL AND THE GRANTING OF STATE'S INSTRUCTION S-4 HAVING TO DO WITH THE FORM OF THE VERDICT.

COMPETENCY
Prior to the competency hearing Laney had been under the care of Dr. Helen Robertson, a psychologist, and Dr. Margie Lancaster, a medical docter with a specialty in neurology, at the State Mental Hospital at Whitfield. Both doctors were of the opinion that Laney was competent to stand trial and offered detailed testimony in support of their opinions.
Dr. Charlton Stanley, a foresnic psychologist and Dr. Donald Guild, a psychiatrist, were also called to testify. Both doctors had formerly been associated with Whitfield and testified at Laney's first trial. These doctors were called upon by the court to re-evaluate Laney prior to his second trial. Based on their brief re-evaluation examination in September of 1983 Dr. Stanley was of the opinion that Laney was not competent to stand trial. In September Dr. Guild, by letter, informed the court that Laney was competent to stand trial. At this hearing, however, Dr. Guild explained that his opinion rendered in September was based upon an examination conducted in a non-stressful atmosphere. He was concerned as to whether or not Laney was capable of maintaining that competency under the stress of a trial. Neither Dr. Stanley or Guild had treated Laney since 1981 and Guild did testify that those doctors who were treating Laney on a regular basis were far better able to evaluate his ability to testify and communicate with counsel at trial than he. These were the people who had most recently observed him in staffing sessions at the State Hospital. He explained that in a staffing session a stressful situation is created much like a courtroom atmosphere.
Based on the above testimony the court determined that Laney was competent to stand trial. When the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, this Court will not overturn that finding unless we can say, from the evidence, that the finding was manifestly against the overwhelming *1245 weight of the evidence. Emanuel v. State, 412 So.2d 1187 (Miss. 1982). Reviewing the testimony we find no error in the court's decision regarding Laney's competency to stand trial.

GUILTY VERSUS GUILT BY REASON OF INSANITY
In our opinion in Laney we said that the M'Naghten test of insanity remains the law in this State with regard to the insanity defense. We reiterate that test as follows:
To establish a defense on the ground of insanity, it must be clearly proved that at the time of committing of the act the accused was laboring under such a defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it that he did not know that he was doing what was wrong.
421 So.2d at 1218.
Also see Merrill v. State, 482 So.2d 1147 (Miss. 1986); Frost v. State, 453 So.2d 695 (Miss. 1984); Billiot v. State, 454 So.2d 445 (Miss. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 1232, 84 L.Ed.2d 369 (1985); Edwards v. State, 441 So.2d 84 (Miss. 1983); Groseclose v. State, 440 So.2d 297 (Miss. 1983).
Although the expert witnesses expressed their views that Laney was M'Naghten insane at the time he committed the crime, their testimony before the jury did not bear that out. The jury, upon hearing the expert's testimony and upon being properly instructed as to M'Naghten had ample evidence upon which to determine that Laney was not M'Naghten insane when he shot Deputy Smith. Furthermore, expert opinions of psychiatrists are not conclusive upon the issue of insanity but rather insanity is a question to be resolved by the jury. Lias v. State, 362 So.2d 198 (Miss. 1978). Also see Billiot v. State, 454 So.2d 445 (Miss. 1984).
It is uncontradicted in the record that Laney suffers from the mental disorder, schizophrenia, paranoia type. However, this does not in itself make him M'Naghten insane.
At the first trial Dr. Guild was of the opinion that Laney was competent to stand trial as well as being responsible for his actions in accordance with objective criterion. Guild believed that Laney was sane at that time in the sense that Laney might have thought others would perceive his actions as illegal. In other words, according to Guild, he might have known or he would have known that others would think that the killing was unlawful, but that he thought it was right. After spending approximately one and one-half hours with Laney since the first trial Dr. Guild explained his initial impression was wrong and was now of the opinion that Laney was so disorganized and delusional at the time that he did not comprehend right from wrong. Guild said "... I don't think that you can morally hold Waddell Laney responsible for the death of the deputy. I just cannot do that." Guild said ". . my opinion is still that he knew the nature and quality of his acts." That is, Laney was aware that he had a .22 rifle which could kill or severely injure. However, Guild did not believe Laney knew that his actions were wrong because of his mental illness. With regard to Laney, Guild said, "I certainly believe that if you feel that God has commanded you to do something, you would have to have the ultimate right on your side."
Dr. Lancaster was asked to explain why she felt Laney was not responsible for his actions. She said "He felt that he was acting on direct orders from God. He knew that killing a man was wrong legally, but he felt if God commanded him to do this, that it was right." When asked "Did the Defendant know the nature and quality of his act on January 12, 1981?" She responded "He knew that killing a person was wrong in the eyes of the law, or the state's law." Again on cross-examination she said "He knew he was shooting the sheriff and the deputy and he was to kill them, yes". She acknowledged that he knew killing a law enforcement officer was against the law of the State of Mississippi and that society did not approve of killing.
*1246 Dr. Robertson was of the opinion that Laney knew the nature and quality of his act on January 12, 1981. She testified "... I think also he knew at the time of the shooting it was wrong to kill a person". When asked if Laney knew it was against the laws of the State of Mississippi to kill a human being she said, "Yes, I think he did".
According to Dr. Stanley, Laney was M'Naghten insane at the time the crime was committed, although in 1981 his opinion was that Laney was sane at the time he committed the crime. Stanley was asked whether or not Laney knew the nature and quality of his act. He said "Yes, at the time of the shooting of the sheriff and the deputy, he did know the nature and quality. He knew he was shooting the uniformed officers. He knew that shooting at a man would make him very, very dead." Although Stanley testified Laney could not appreciate the wrongfulness of his act, when asked "So, then, he did know that he was violating the laws of the state of Mississippi.", he responded "Yeah, I think that he knew that the law would take a dim view if you'd asked him, that the law would take a dim view of him shooting a law enforcement officer."
Various relatives of Laney and community members testified with regard to his sanity. The general opinion was that Laney had never been normal, had always been different.
It was based upon the above testimony that the jury found Laney guilty of capital murder. The evidence is uncontradicted that Laney knew the quality and nature of his acts. The testimony was also abundantly clear that Laney knew what he was doing was considered wrong by society and was wrong according to the laws of this State. The question concerning Laney's insanity was a question for the jury's resolution. From what they heard and observed at trial they determined that Laney knew the nature and quality of the act of shooting Deputy Smith and was cognizant of the fact that this act was wrong.
We have carefully scrutinized this record and cannot state that the jury's determination in this case was unsupported by the evidence.

INSTRUCTIONS
The appellant argues that it was error to grant State Instruction 4 as to the form of the verdict in that the first options available to the jury relate to a finding of guilty of capital murder. We have examined Instruction S-4 and are of the opinion that appellant's contention is without merit.
We have also carefully reviewed the instructions requested by appellant and refused by the court and find them to be somewhat confusing as well as repetitious of other instructions offered to the jury. A trial court is not required to instruct a jury over and over on a principal of law even though some variations are used in different instructions. Groseclose v. State, 440 So.2d 297 (Miss. 1983). Furthermore, all instructions are to be read together and if the jury is fully and fairly instructed by other instructions the refusal of any similar instruction does not constitute reversal error. Groseclose, supra; Barr v. State, 359 So.2d 334 (Miss. 1978). Having reviewed the instructions of the court to the jury, we find that they accurately and sufficiently guided the jury in their deliberations.
Due to the nature of this case we have prudently reviewed the holdings of the court below and find no error. After close re-examination of the evidence offered at trial we find it was sufficient to support the verdict of the jury. The conviction and sentence of appellant is hereby affirmed.
Should Laney's mental condition deteriorate to the point that it is detrimental to his mental as well as physical health to remain at the State facility at Parchman the Commissioner has the authority to transfer him for observation, diagnosis and treatment pursuant to Mississippi Code Annotated § 47-5-120 (re-enacted 1984) to a facility of the Department of Mental Health for his *1247 safety as well as the safety of those around him.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON and DAN M. LEE, JJ., specially concur.
ROBERTSON, Justice, concurring:
This is another of those cases wherein the evidence is overwhelming that the Defendant was at the time of his crime M'Naghten insane. Yet, as seems to happen invariably, the jury rejected the insanity defense and returned a verdict of guilty. Compare Edwards v. State, 441 So.2d 84 (Miss. 1983); Groseclose v. State, 440 So.2d 297 (Miss. 1983); and Lias v. State, 362 So.2d 198 (Miss. 1978).
Here we have been seriously urged that Laney is not guilty because in his perception he was commanded by God to kill. We are told that this rendered Laney legally incapable of committing murder. That guilt or innocence should turn on such a matter seems absurd  be the command from God or the devil, if for no other reason that all too many of us all too often mistake the voice of one for that of the other.
In Groseclose I filed a separate opinion urging that we consider modification of or outright abolition of the insanity defense. Groseclose v. State, 440 So.2d at 302-06. The core of my view stated there is
that consideration of any mental illness from which the defendant may have been suffering at the time of his actions [should] be postponed until sentencing. A criminal trial ought be held for the purpose of determining whether the defendant committed the act with which he had been charged [and whether that act was volitional as distinguished from accidental]. Whether he was insane seems more relevant to sentence or disposition.
440 So.2d at 305.
In the two and a half years that have elapsed since Groseclose I have reflected upon the matter and those reflections further convince me of the "bankruptcy" of the insanity defense. It is jury-nullified in the overwhelming majority of the cases in which its elements are proved  the case of Waddell Laney being only the latest. Because insanity is a matter to my mind far more rationally related to sentence or disposition than to guilt, and for the reasons I have set forth in much greater detail in Groseclose, I would concur in today's judgment and urge that at the earliest opportunity we abolish the insanity defense in this state.
DAN M. LEE, J., joins in this opinion.