489 So.2d 1086 (1986)
Charles HUNTER
v.
STATE of Mississippi.
No. 56197.
Supreme Court of Mississippi.
May 28, 1986.
*1087 Tom T. Ross, Jr., Ross & Ross, Charles E. Webster, Clarksdale, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROY NOBLE LEE, Presiding Justice, for the Court:
Charles Hunter was indicted, tried and convicted in the Circuit Court of Coahoma County, on a charge of murder less than capital and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. He has appealed from the judgment of the court and assigns five (5) errors in the trial below.
On December 8, 1983, appellant spent the night at the home of his aunt, Johnnie Mae Weddington, in Clarksdale, Mississippi. The next morning he and Johnnie Mae Weddington became involved in an altercation and he stabbed her more than twenty-five (25) times with a butcher knife, which resulted in her death. Aaron Weddington, the victim's husband, awoke, heard the noise and went to the scene where he saw what was happening. Aaron Weddington ran from the house and across the street telling his neighbor, Frank Ratliff, to call the law. Subsequently, they returned to the scene of the stabbing where Weddington saw appellant with a knife in his hand. Ratliff testified that when he went into the Weddington house, he saw appellant stabbing the victim and heard appellant say to her, "I told you I'd kill you," after trying to pull down her pajama bottoms.
Officer N.V. Vaughn arrived and saw appellant standing over the body, and he called to appellant, asking appellant what he was doing. Appellant went down the corridor to the back of the house, and Officer Bill Gardner arrived. The two officers started to the area where appellant had gone, and Officer Gardner asked appellant what he had done. Thereupon, appellant started fighting, struck Officer Gardner and was finally subdued and handcuffed.
On January 25, 1984, after being indicted, appellant filed notice of the insanity defense. He was examined by Whitfield Drs. Helen Robertson and Margie Lancaster, who diagnosed appellant as being a paranoid schizophrenic. They were of the opinion that appellant was competent to stand trial, but were also of the opinion that he was unable to distinguish between right and wrong at the time of the homicide.
The State filed a motion for court-appointed psychiatrist on February 8, 1984, which motion was granted. Dr. Donald Guild, psychiatrist, and Dr. Charlton Stanley, forensic psychologist, reported that they agreed appellant was a paranoid schizophrenic, but that he was competent to stand trial and was M'Naghten sane. Dr. Stanley so testified at the trial.
The State presented lay witnesses who testified that appellant appeared sane on December 8 and 9, one of which witnesses was Carole Weddington, a cousin of appellant, who had a master's degree in counseling in behavioral science. She further testified that she had known him for twenty-five (25) years and that appellant knew right from wrong at the time of the homicide.
Three medical experts testified for the appellant that under the M'Naghten rule, appellant did not know the nature and quality of his acts and did not know right from wrong at the time of the crime. Further, that he believed the victim was the devil's wife and he killed her out of apprehension of harm to both him and his niece. As stated, the prosecution presented Dr. Charlton Stanley, who was of the opinion that appellant knew the difference between right and wrong at the time of the homicide, and that he was M'Naghten sane. The appellant did not testify.

I.

DID THE LOWER COURT ERR IN ADMITTING TESTIMONY OF DR. STANLEY WHICH WAS HEARSAY EVIDENCE?
Appellant contends that certain parts of Dr. Charlton Stanley's testimony constituted inadmissible hearsay and that the State was permitted to introduce the testimony of Dr. Guild without his presence. *1088 Those parts of Dr. Stanley's testimony, which appellant found objectionable, follow:
Q. Well, did you and Doctor Guild concur with those two individuals in the competency to stand trial?
BY MR. WEBSTER: I would object as to this witness testifying as to what Doctor Guild did or did not concur to. Doctor Guild can come in and he can testify as to how he concurred. I think this witness can testify as to what his thoughts were.
BY THE COURT: The objection is sustained; confine it to your own opinion, please, sir.
Q. (By Mr. Mellen) Did you have an opinion?
A. Did I have an opinion?
Q. As to the defendant's competency to stand trial?
A. Oh, at the time I saw him, I thought he was competent to stand trial. We  Doctor Guild and I did dictate a letter which we sent to the court to that effect.
Q. And, did you diagnose any problems or mental illness which the defendant might have?
A. Oh, we concurred with the diagnosis of schizophrenia, paranoid type.
BY MR. WEBSTER: Judge, I would object again. He is continuing to testify that we did this, we did that, in reference to what Doctor Guild may or may not have done. I would ask that he testify as to what he did. Doctor Guild can come in and testify as to what he did.
BY THE COURT: Well, as far as this report is concerned, I am going to overrule the objection and let the doctor testify to what they did jointly as far as the report is concerned, but any methods he used to reach this conclusion, I ask the doctor to refer to himself.
BY THE WITNESS: I'll be careful, your Honor.
Q. (By Mr. Mellen) For the benefit of the Court and the jury, where is Doctor Guild?
A. He is in Canada.
Q. He is unavailable for court today.
A. That is correct. He is somewhere in Nova Scotia.
Q. Now, do you and he work together? I think we have been over that somewhat, but do you work in conjunction with him normally?
A. Yes, we work together as a team.
Q. Have you concurred in your opinions with Doctor Guild's findings?
A. Yes. If you refer to the letter, it was signed by both of us, the report which was provided to the court, we both signed it. He dictated it and I read it. I was present during the dictation and agreed completely.
The record reflects that appellant's experts testified that he was competent to stand trial; that Dr. Stanley and Dr. Guild concurred with the diagnosis of schizophrenia, paranoid type; that Dr. Stanley and Dr. Guild worked together as a team; and that the letter with their opinions was dictated by Dr. Guild in Dr. Stanley's presence, and was read by Dr. Stanley, was prepared and signed by both. Appellant's experts had already testified that he was competent to stand trial and that he was suffering from schizophrenia, paranoid type.
We are of the opinion that the testimony did not constitute inadmissible hearsay. McGowan v. State, 375 So.2d 987 (Miss. 1979); Lee v. State, 338 So.2d 395 (Miss. 1976). Furthermore, the testimony was harmless beyond reasonable doubt. Ethridge v. State, 418 So.2d 798 (Miss. 1982); Taylor v. State, 254 So.2d 728 (Miss. 1971); Knight v. State, 248 Miss. 850, 161 So.2d 521 (1964).

II.

DID THE LOWER COURT ERR IN REFUSING TO GRANT APPELLANT'S 
INSTRUCTION 6721 D-4?
The Instruction D-4 follows:
The Court instructs the jury that a reasonable doubt of guilt may arise from *1089 the evidence, from the lack of evidence, from an insufficiency of evidence, or from a conflict in the evidence; but however it arises, if it does arise in your mind, then it both justifies and demands, under your oaths, that you return a verdict of "Not Guilty."
We have examined all the instructions granted by the court and are of the opinion that the jury was properly and adequately instructed as to reasonable doubt. The lower court did not err in granting defendant's requested instruction in a different form. Anderson v. State, 413 So.2d 725 (Miss. 1982); Wells v. State, 288 So.2d 860 (Miss. 1974); Auman v. State, 271 So.2d 427 (Miss. 1973). Furthermore, the Instruction D-4 is argumentative and may be categorized as abstract.

III.

DID THE LOWER COURT ERR IN ADMITTING IN EVIDENCE THE PHOTOGRAPH 
OF THE VICTIM?
Appellant contends that a photograph of the victim admitted in evidence by the lower court lacked probative value and served to inflame the jury, since the homicide was not denied or contradicted in any manner. We have viewed the photograph and examined the record with reference to evidence relating to it. We are of the opinion that the photograph had probative value in corroborating the testimony of Officer Bill Gardner as to the position and condition of the victim's body, and that there is no merit in this assignment of error. Kelly v. State, 463 So.2d 1070 (Miss. 1985); Groseclose v. State, 440 So.2d 297 (Miss. 1983); Billiot v. State, 454 So.2d 445 (Miss. 1984); Mallette v. State, 349 So.2d 546 (Miss. 1977).

IV.

DID THE LOWER COURT ERR IN ADMITTING TESTIMONY PROHIBITED UNDER RULE 4.08 OF THE MISSISSIPPI UNIFORM CRIMINAL RULES OF CIRCUIT COURT PRACTICE?
On February 9, the lower court ordered that appellant have a psychiatric examination by Dr. Guild. A tape statement of the examination was made and furnished to defense counsel. Motion in limine was filed by such counsel to suppress the statement. Rule 4.08 of the Mississippi Uniform Criminal Rules of Circuit Court Practice states in pertinent part:
The court may upon motion of the prosecuting attorney require the defendant to be examined by a competent psychiatrist selected by the court. No statement made by the accused in the course of any examination provided for by this rule shall be admitted in evidence against the defendant on the issue of guilt in any criminal proceeding.
During the trial on rebuttal, Dr. Stanley was asked whether appellant made any conflicting statements during the interview, which was objected to by counsel. In overruling the objection, the lower court stated:
BY THE COURT: All right, I have read this case which I don't think really throws a lot of light on the question that is before the Court, and I have been thinking about this. When a defendant enters a plea of not guilty by virtue of insanity, or raises that question and a reasonable doubt is raised, every facet of that defendant's life is open to inspection. I know this rule written in this book if taken literally means that no statement made by the accused in the course of any examination provided for by this rule shall be admitted into evidence against the defendant on the issue of guilt in any criminal proceeding.
BY THE COURT: I may be wrong. If I am wrong, the Supreme Court will have to reverse this Court, but I don't believe that they are talking about the issue of guilt insofar as sanity or insanity is concerned. I believe we are talking about the issue of guilt with regard to the elements of the crime itself, and the issue of sanity or not is something that has to be dealt with through both lay and expert witnesses, and the statements of *1090 the defendant that would be consistent or inconsistent to show his mental condition. So, the Court is going to reverse its original ruling and allow the question to be asked.
On direct examination, Dr. Stanley made the following comments about his interview with the appellant:
For one thing he had indicated to me during the interview that he committed this act because the deceased lady was the devil's wife. Other information I have indicated that he had told someone else, one of the policemen, that he did it simply because, in his words, as told to me, was that he "wanted some p____", which indicated some sexual favor that he wanted. There was also some internal consistency about what he told us. For example, there's the old standby of "I don't remember". Well, that's okay, but if you remember one thing, such as killing someone for being the devil's wife, and then not remembering a scuffle a few minutes later during the arrest, and then after saying that he didn't remember the scuffle, then it went to, "Well, they beat me up". Now, you can't have it both ways. You either remember it, or you don't. You don't remember something and then ten minutes later  Or, you remember something and then ten minutes later you don't remember much of anything, and then confronted with that fact, then you remember again, but it's you know, an attempt to explain it away. It simply does not fit.
When a defendant relies upon the defense of insanity, the doors open for the admission of evidence of all kinds. Every act of the party's life is relative to the issue and is admissible in evidence. Taylor v. State, 452 So.2d 441 (Miss. 1984); Anderson v. State, 381 So.2d 1019 (Miss. 1980).
In a proper case, admission of the interview and statements of a defendant may be inadmissible and prejudicial. However, in the present case, the statement was cumulative of statements made to the appellant's own experts and to lay persons and there was no reversible error in its admission.

V.

WAS THE VERDICT OF THE JURY AGAINST THE OVERWHELMING WEIGHT OF 
THE EVIDENCE?
The appellant has failed to cite any legal authority supporting this assignment. Under the established rule we do not consider an unsupported assigned error. Ramseur v. State, 368 So.2d 842 (Miss. 1979); Dozier v. State, 247 Miss. 850, 157 So.2d 798 (1963).
This jurisdiction long has adopted and followed the M'Naghten rule on insanity. Succinctly, the rule follows:
To establish a defense on the ground of insanity, it must be clearly proved that at the time of committing of the act the accused was laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong.
Laney v. State, 421 So.2d 1216, 1218 (Miss. 1982); see also Laney v. State, 486 So.2d 1242 (Miss. 1986); Gerlach v. State, 466 So.2d 75, 79 (Miss. 1985); Frost v. State, 453 So.2d 695, 697 (Miss. 1984); Harvey v. State, 207 So.2d 108, 110-115 (Miss. 1968).
In Gerlach, the Court said:
Gerlach's life has been essentially an odyssey of catastrophe and perversion. There can be little doubt but that she is decidedly psychotic  she is a textbook case. All of this evidence, however, runs smack dab into the M'Naghten rule which in laymen's terms states that: Just because you are crazy does not mean you are legally insane. See Laney v. State, 421 So.2d 1216, 1218-1219 (Miss. 1982); Harvey v. State, 207 So.2d 108, 110-115 (Miss. 1968).
In the context of M'Naghten  given the fact that there is testimony on both sides of the issue  a jury's verdict on the insanity issue is essentially conclusive and unreviewable. Frost v. State, 453 So.2d 695, 698 (Miss. 1984); Groseclose v. State, 440 So.2d 297, 300-01 (Miss. 1983); *1091 Lias v. State, 362 So.2d 198, 201 (Miss. 1978); Smith v. State, 245 So.2d 583, 585-86 (Miss. 1971).
466 So.2d at 79.
The evidence in the case sub judice presented a sharp and contradictory conflict on the issue of M'Naghten insanity. The issues of sanity and guilt were properly presented to the jury, and those issues were resolved against the appellant. Therefore, this assignment of error must be resolved against the appellant here.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
HAWKINS, J., dissents.
ROBERTSON, J., concurs by written opinion.
HAWKINS, Justice, dissenting:
For the reasons stated in my dissenting opinion in Gill v. State, 488 So.2d 801, (Miss. 1986), I respectfully dissent.
ROBERTSON, Justice, concurring:
I join in and adhere to what has been said in Sections I  IV of the majority opinion. I concur in Section V for the reasons there set forth, as well as for the reasons I have stated in my separate opinions in Gill v. State, 488 So.2d 801, 809 (Miss. 1986) (not yet reported); Laney v. State, 486 So.2d 1242, 1247 (Miss. 1986); and Groseclose v. State, 440 So.2d 297, 302-06 (Miss. 1983).