421 So.2d 1216 (1982)
Waddell LANEY
v.
STATE of Mississippi.
No. 53690.
Supreme Court of Mississippi.
October 13, 1982.
Rehearing Denied December 8, 1982.
John E. Shaw, Kosciusko, for appellant.
Bill Allain, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Justice, for the Court:
Waddell Laney, appellant, was indicted, tried and convicted for the capital murder of Charles Busby Smith, deputy sheriff of Montgomery County who was acting within his official capacity. At the conclusion of the sentencing phase of Laney's trial, the jury sentenced him to death. Finding error, we reverse and remand for a new trial.
The facts of this case are not disputed. On January 12, 1981, Sheriff Billy Costilow went to the residence of Waddell Laney to serve a lunacy writ issued by a chancery court and deliver Laney to the Region Six Mental Health Center in Greenwood. Sheriff Costilow was accompanied by Deputy Sheriff Charles Busby Smith. Upon arrival, the officers knocked on Laney's door. They also called out several times, but no one answered. Thinking nobody was home, the officers walked off the porch and into the yard. Once they were in the yard, Laney came from behind the house, carrying a .22-caliber rifle in his left hand and a Kaiser blade in his right. Sheriff Costilow and Laney walked toward each other. The *1217 sheriff informed Laney of the writ and their purpose, which was to take him to the doctor for some mental health treatment. Laney, replying that there was nothing wrong with him, turned and walked toward his house. He suddenly wheeled around and started shooting at the officers. Sheriff Costilow was seriously injured; Deputy Smith was killed. Following the shooting, Laney ran, dropping the Kaiser blade, but holding on to the gun. A short time later, Laney was arrested by Jerry Butler, a Mississippi highway patrolman.
On March 31, 1981, Laney was indicted for capital murder in the shooting death of Deputy Sheriff Smith. Laney invoked the insanity defense.
The issue presented in this case is whether Laney was afforded a fair trial in light of the fact that a juror, Mrs. Ruth Brister, did not completely and fully respond to questions asked during the voir dire examination. During this examination, defense counsel asked the following questions: "Is there anybody on the panel related by blood or marriage to any present law enforcement person in Montgomery County, or anywhere else?"; and, "Is there any other member related by blood or marriage to any law enforcement officer or has any member ever been employed by law enforcement, at any time in the past?" Two jurors answered affirmatively and were excused. Mrs. Brister did not answer.
During a hearing on the motion for a new trial, it was learned that one of Mrs. Brister's brothers had been Deputy Sheriff and Sheriff of Montgomery County approximately twenty years before the trial, and also had been employed by the State Fire Marshal's office until a short time before the trial; that another brother was, at the time of trial, an investigator with the Mississippi Highway Patrol, and that her nephew was currently serving as a Mississippi highway patrolman. Despite this, the circuit court judge denied Laney's motion for a new trial. This was error.
Because of the nature of this case, we must first deal with the standard of review to be employed. We recently stated in Irving v. State, 361 So.2d 1360 (Miss. 1978), the following:
We recognize that thoroughness and intensity of review are heightened in cases where the death penalty has been imposed. Augustine v. State, 201 Miss. 731, 29 So.2d 454 (1947). What may be harmless error in a case with less at stake becomes reversible error when the penalty is death. Forrest v. State, 335 So.2d 900 (Miss. 1976); Russell v. State, 185 Miss. 464, 189 So. 90 (1939). (361 So.2d at 1363) (emphasis ours).
With this guidepost, we now turn to the question of whether the court committed reversible error in failing to grant Laney a new trial upon undisputed proof of juror Brister's law enforcement kinships.
In Odom v. State, 355 So.2d 1381 (Miss. 1978), a rule was established to be used when a juror failed to respond to questions posed during voir dire examination. We held:
[W]here, as here, a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered. It is, of course, a judicial question as to whether a jury is fair and impartial and the court's judgment will not be disturbed unless it appears clearly that it is wrong. (355 So.2d at 1383) (citations omitted  emphasis ours).
*1218 Application of this rule has been made since our decision in Odom. See Atkinson v. State, 371 So.2d 869 (Miss. 1979) (reversal resulted because a juror, sitting on a case involving manslaughter by culpable negligence arising from automobile collision, failed to affirmatively answer inquiry concerning whether any members of a juror's family had died as the result of an automobile accident, when in fact two close relatives of a juror had been killed in separate automobile accidents); Brooks v. State, 360 So.2d 704 (Miss. 1978) (reversal caused by a juror failing to admit that a member of her immediate family was the recent victim of a crime); and Dase v. State, 356 So.2d 1179 (Miss. 1978) (conviction for murder reversed due to a juror not responding to a question asked as to whether any members of the juror's family had ever been a victim of a crime, and this juror's son had been stabbed to death approximately one month prior to trial).
We also recognized in Odom that "it is readily evident that no firm, unbending rule can be laid down that would control every situation that might arise on the voir dire of prospective jurors. Therefore, each case must be decided on an ad hoc basis considering the facts then before the court." 355 So.2d at 1383. In the instant case, the trial was held in the county in which Sheriff Costilow and Deputy Smith served. Because this is a rural county in which most of its residents were surely aware of the shooting of the sheriff and the killing of his deputy, the air was no doubt charged with emotion. Finally, the fact that Mrs. Brister was related to three law enforcement officers would, under the circumstances, be a very crucial issue. Defense counsel would certainly have exercised a challenge to her service on the jury.[1]
It is clear that the three-pronged Odom test was answered in the affirmative. As to the fourth, it is inescapable that prejudice to Laney in selecting the jury reasonably could be inferred from Mrs. Brister's failure to respond when viewed in the light of the heightened review standard used in death penalty cases, which leads us to hold that a new trial should be ordered.
We deem it necessary, however, to discuss the insanity defense, another issue presented in this case. This Court has for many years adhered to the M'Naghten Rule as the test of insanity. Our earliest cases dealing with insanity are Bovard v. State, 30 Miss. 600 (1856); and Cunningham v. State, 56 Miss. 269 (1879). This test is as follows:
"[T]o establish a defense on the ground of insanity, it must be clearly proved that at the time of committing of the act the accused was laboring under such a defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it that he did not know that he was doing what was wrong."
(Harvey v. State, 207 So.2d 108, 111 (Miss. 1968), quoting M'Naghten's Case, 8 Eng.Rep. 718 (1843).
In Hill v. State, 339 So.2d 1382 (Miss. 1976), cert. den. 430 U.S. 987, 97 S.Ct. 1689, 52 L.Ed.2d 384 (1977), we recognized:
As has been done many times in prior criminal cases where the issue of the defendant's sanity is raised, we are urged to abandon the M'Naghten Rule as to the determination of criminal responsibility. In place of the M'Naghten Rule, we are asked to accept and adopt the rule set forth in 4.01 of the American Law Institute's Model Penal Code (1962). That section would relieve a defendant of responsibility for criminal conduct:
... if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.
Such a rule in effect would provide for the acquittal of those who commit criminal acts and assert that they did such act or acts because of so-called uncontrollable *1219 urges or irresistible impulses. Though the M'Naghten Rule may not be a perfect means to test criminal responsibility, as this Court (including this writer) has said before, it is the safest of the rules proposed. M'Naghten better protects society's needs than the American Law Institute's proposed rule, supra, which the court has examined in earlier cases and found to be unsatisfactory. In making our decision we have carefully read and considered the views expressed in United States v. Freeman, 357 F.2d 606 (2d Cir.1966), and do not consider it persuasive. Language in that opinion which says of M'Naghten that "the expert is thereby compelled to test guilt or innocence by a concept which bears little relationship to reality" is simply not an expression of logic. Though M'Naghten may have had "Victorian origins" as said in Freeman, supra, we reject the thesis that it is not "grounded in reason" though admittedly the subjective aspects of sanity or insanity present difficult problems. (339 So.2d at 1385-86) (emphasis ours).
In Edmond v. State, 312 So.2d 702 (Miss. 1975), it was stated:
This Court has recently (as it has done many times in the past), rejected the argument that one may escape responsibility for criminal acts done under some so-called uncontrollable urge or impulse. Myrick v. State, 290 So.2d 259 (Miss. 1974); Jones v. State, 288 So.2d 833 (Miss. 1974). Admittedly the M'Naughten (sic) test of criminal responsibility may not be a perfect means to test sanity of one charged with crime, but no better solution has been offered. Thus the test in this state remains the ability of the accused to realize and appreciate the nature and quality of his deeds when committed and his ability to distinguish between right and wrong... . (312 So.2d at 704).
Finally, in Harvey v. State, 207 So.2d 108 (Miss. 1968), this Court, in remaining bound to the M'Naghten Rule, concluded:

[U]ntil the troubled waters of legal tests for insanity have become more calm and until the courts have charted some safe course and have settled upon some acceptable solution for a better test, this Court has decided to continue, "for the time being," to submit the question of criminal responsibility on the issue of insanity to the jury by the time-tested M'Naghten rule. The time-tested way is the safe way, and the safe way is the best way. ... (207 So.2d at 115) (citations omitted  emphasis ours).
In the instant case, we are not swayed to abandon the use of the M'Naghten test of insanity, and we hold that M'Naghten remains the law in this state with regard to the insanity defense.
Because we have concluded that the lower court committed reversible error when it denied Laney a new trial, his conviction and sentence must be reversed. We decline to address the remaining assignments of error since Laney must be retried.
Based on the foregoing, this cause is reversed and remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM, BOY NOBLE LEE, BOWLING and PRATHER, JJ., concur.
HAWKINS, J., took no part.
NOTES
[1] It was learned at oral argument that defense counsel still had five peremptory challenges remaining after the jury was selected, in addition to the unlimited number of challenges for cause.