## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01390-SCT

*BOBBY BUCKLEY a/k/a BOBBY L. BUCKLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/1999 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES B. EVERETT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/14/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/4/2001 |

**BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Bobby Buckley ("Buckley") appeals his conviction from the Circuit Court of Newton County, Mississippi for the crime of murder and sentence of life imprisonment with the Mississippi Department of Corrections. On August 9, 1999, Buckley was tried and convicted of the murder of Michael Smith by a Newton County Circuit Court jury, Circuit Judge Marcus D. Gordon presiding. The pertinent facts will be developed as the analysis continues, as such facts concern the motions made by Buckley and the circuit court's rulings on those motions.

### STATEMENT OF THE ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN OVERRULING BUCKLEY'S MOTION FOR A CONTINUANCE.**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING A MISTRIAL WHEN A WITNESS ENTERED THE COURTROOM IN CHAINS.**

**III. WHETHER THE TRIAL COURT ERRED IN DENYING A NEW TRIAL WHERE A JUROR FAILED TO RESPOND TO A QUESTION DURING VOIR DIRE.**

**IV. WHETHER BUCKLEY IS ENTITLED TO A NEW TRIAL DUE TO CUMULATIVE ERRORS.**

**DISCUSSION OF THE LAW**

**I. WHETHER THE TRIAL COURT ERRED IN OVERRULING BUCKLEY'S MOTION FOR A CONTINUANCE.**

¶2. The decision to grant or deny a continuance is left to the sound discretion of the trial court, and this Court shall not reverse for the denial of a continuance unless it appears that manifest injustice resulted from the denial. *Stidham v. State*, 750 So.2d 1238, 1242 (Miss. 1999)(collecting authorities). As no manifest injustice resulted from the denial of the continuance, this issue is without merit.

¶3. On the morning of trial, Buckley filed his motion for continuance alleging that Antonio Griffin ("Griffin"), for whom two subpoenas had been issued, was not present for trial and that Buckley could not continue as Griffin was a material witness to Buckley's alibi defense. Buckley alleged that the Newton Police Department failed to serve Griffin when they had him in custody prior to the date of trial. Newton Assistant Chief of Police Harvey Curry and Deputy Circuit Clerk Ann French were called to the stand to testify concerning the service of process on Griffin. During testimony, the following facts were clarified:

> * Griffin was served while in the custody of the Newton Police Department on June 30, 1999.
>
> * James Everett ("Everett"), Buckley's attorney, asked Curry several times whether Griffin had been served, and Curry assured Everett that Griffin had been served.
>
> * Everett repeatedly asked Curry to bring the return on the process to the courthouse to which Curry stated that he had it at the station but could not find it.
>
> * The Saturday before trial Everett requested Curry to supply him with the phone number of Griffin's mother to which Curry replied that he could not locate it and that Everett should have the number as Griffin was his "client."
>
> * Curry had contacted Griffin's mother and was informed that Griffin would be flying in to Newton over the weekend because the Mississippi Bureau of Narcotics had a warrant for Griffin.
>
> * A second subpoena for Griffin had been issued on August 3 for his appearance at the witness call on August 6 for which Griffin did not present himself.
>
> * No additional subpoena was issued for Griffin when he failed to show on August 6.
>
> * After testimony on the morning of trial, Curry brought the return on the process to the circuit court.

¶4. After the testimony of Curry and French, the circuit court denied Buckley's motion for a continuance. The judge stated that he believed the testimony of Griffin was cumulative, neither vital nor necessary. A review of Griffin's testimony at Buckley's previous trial, which ended in a mistrial due to jury deadlock, reveals that Griffin's testimony is indeed cumulative to the testimony of defense witnesses Chevette and Shannon Lindsey. Griffin's previous testimony simply stated that Griffin picked Buckley up around 4:00 the afternoon of the alleged homicide; that Griffin informed Buckley that the police were looking for him and if Buckley killed Michael Smith then he should turn himself in; that Griffin gave Buckley a ride to his

grandparent's house, arriving between 4:40 and 5:00; and that Griffin had no knowledge of what happened before 4:00 the afternoon Smith was murdered.[(1)]

¶5. The judge, however, went further, explaining that Buckley's motion did not meet the standards for granting a continuance due to an absent witness as set out in Miss. Code Ann. § 99-15-29 (2000), which states in pertinent part:

> On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion . . . . A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.

The judge specified that Buckley's motion for a continuance did not set forth the necessary allegations of diligence. Indeed, the only action Everett or Buckley took was to ask Curry if the Newton Police Department had served process on Griffin, which Everett was repeatedly assured had been done and in fact was done on June 30, 1999.

¶6. Furthermore, the judge noted that the motion did not detail the substance of the testimony of the absent witness or allege that the witness could be produced at a succeeding term of court. The judge also commented that it was unknown whether the witness would ever be available as he was outside the state and faced criminal charges if he returned. Buckley's motion was subsequently denied.

¶7. After the denial of the written motion, Everett made a motion ore tenus for a continuance, stating the same grounds and adding those statutory requirements left out of his written motion. The judge denied this motion as an attempt to cure the deficiencies of his previous motion and skirt the court's ruling. The judge, however, declared Griffin to be unavailable and granted Buckley the opportunity to develop Griffin's prior trial testimony and have it read into the record. The trial lasted only a day, and Griffin's prior testimony was not read into the record. The prosecution offered to stipulate that Griffin picked Buckley up at 4:00 and dropped Buckley off at his grandparents' house between 4:40 and 5:00. However, the stipulation was not agreed upon and was not entered in the record.

¶8. Considering the discretion granted the circuit court in this matter as well as the requirements of Miss. Code Ann. § 99-15-29, a review of the facts clearly reveals that neither Buckley nor Everett exercised the degree of diligence necessary to warrant a continuance. Furthermore, Buckley failed to show that manifest injustice resulted from the denial of his motion for a continuance. This issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING A MISTRIAL WHEN A WITNESS ENTERED THE COURTROOM IN CHAINS.

¶9. The defense called Orlando Smith ("Smith") to testify on behalf of Buckley. Smith entered the courtroom in leg chains. Upon seeing this, the judge immediately asked Smith to leave the room, and the leg chains were removed. Outside the presence of the jury, the judge reprimanded the Sheriff and heard Buckley's motion for a mistrial. The judge subsequently denied Buckley's motion for a mistrial pointing out the following:

* The judge noticed almost immediately that Smith was wearing leg irons and had them removed outside the presence of the jury.

* Given the positioning of the jury box and the entry of Smith in relation to the jury box, it would have been very hard for the jury to see the leg chains.

* Smith was wearing long, loose-fitting pants and the chains were not shiny, making it very difficult for the jury to see the chains.

* Smith was in view of the jury for only five to ten feet.

* Smith was called by Everett, and Everett had recently talked to Smith, giving Everett notice of the chains.

* The judge offered to voir dire the jury for prejudice and/or to instruct them to disregard the chains. Everett declined, reasoning that such questions or instruction would draw unnecessary attention to the issue.

¶10. Buckley claims that Smith's appearance unduly prejudiced the jury and that nothing could cure this error. Case law, however, holds otherwise. As noted by the State, *Fisher v. State*, 532 So.2d 992, 999 (Miss. 1988) and *Rush v. State*, 301 So.2d 297, 300 (Miss. 1974) clearly enunciate that where there is no record that the jury saw the restraints or where the restraints were quickly removed such is harmless error. The judge in this instance detailed his reasoning for denying Buckley's motion for a mistrial, and Buckley offered no proof that the jurors saw Smith in leg chains. *See also Davenport v. State*, 662 So.2d 629, 632-33 (Miss. 1995); *Wiley v. State,* 582 So.2d 1008, 1014 (Miss. 1991). The act in this instance was unintentional and coincidental, and thus constituted mere harmless error.

¶11. Buckley also objects to the questioning by prosecutors concerning Smith's possible gang affiliation and his previous whereabouts when testimony was being taken for the trial. Buckley's objection to questioning was sustained by the judge, who also instructed the jury to disregard the question and any inferences flowing therefrom. The jurors agreed they could abide by the instruction. Buckley moved for a mistrial, but his motion was denied. Buckley does not expound upon this contention of error nor does he cite any authority specifically supporting his position. Based upon the circumstances and actions of the judge, he did not abuse his discretion in denying Buckley's motion for a mistrial.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING A NEW TRIAL WHERE A JUROR FAILED TO RESPOND TO A QUESTION DURING VOIR DIRE.

¶12. During voir dire Everett, counsel for Buckley, asked the potential petit jurors the following question:

Are any of you -- have any of you been a victim of a crime? Any member of your -- has a crime been committed against you , or any member of your family? **Are you or any member of your family, related to any police or law enforcement officer, Sheriff, or what have you?**

Two jurors raised their hands and were acknowledged or questioned by Everett. Everett used a peremptory challenge on Carey Smith, whose brother-in-law was a highway patrolman, and excused for cause Stanley Wash, who was a Mississippi narcotics agent.

¶13. After sentencing, Buckley filed a motion for a new trial claiming that Katherine Parker ("Parker"), a juror whose daughter was a dispatcher for the Newton Police Department on Saturday nights, did not respond to the above referenced question during voir dire. The trial judge, after hearing argument and testimony, found that the question posed by Everett was ambiguous as applied to Parker. The judge concluded that the common meaning given to a police dispatcher does not equate with police officer, that a dispatcher's duties and powers are distinct from a police officers, and that Everett should have been more thorough in his examination.

¶14. This Court has previously stated that:

> Following a jury's verdict, where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause, the trial court must grant a new trial, and, failing that, we must reverse on appeal. We presume prejudice. Where, as a matter of common experience, a full and correct response would have provided the basis for a peremptory challenge, not rising to the dignity of a challenge for cause, our courts have greater discretion, although a discretion that should always be exercised against the backdrop of our duty to secure to each party trial before a fair and impartial jury.

*T.K. Stanley, Inc. v. Cason*, 614 So.2d 942, 949 (Miss. 1992). As there is no claim that Parker could be challenged for cause, this Court employs the abuse of discretion standard.

¶15. The judge correctly relied upon *Odom v. State*, 355 So.2d 1381, 1383 (Miss. 1978) which governs judicial inquiry in such instances:

1) whether the question was relevant to the voir dire examination

2) whether the question was unambiguous

3) whether the juror had substantial knowledge of the information sought to be elicited.

The pertinent part of Everett's question -- "Are you or any member of your family, related to any police or law enforcement officer, Sheriff, or what have you?" -- was found to be ambiguous as it related to Parker, failing the *Odom* test. In this ruling, the judge did not abuse his discretion.

¶16. Buckley cites two cases to support his position that his question to Parker was unambiguous, *Laney v. State*, 421 So.2d 1216 (Miss. 1982) and *Cason*, 614 So.2d at 949. In each case cited, however, the ambiguity prong of the *Odom* test was essentially a non-issue as the proper relationship between the questions asked and the knowledge of the jurors were clearly evident.

¶17. In *Laney* the following questions were broached: "Is there anybody on the panel related by blood or marriage to any present law enforcement person in Montgomery County, or anywhere else?"; and, "Is there any other member related by blood or marriage to any law enforcement officer or has any member ever been employed by law enforcement, at any time in the past?" *Laney*, 421 So.2d at 1217. On motion for a new trial, it was learned that the juror in question had one brother who had been a Deputy Sheriff and the Sheriff of Montgomery County for twenty years prior to the trial, and had been employed by the State Fire Marshal's office until a short time before the trial; that another brother was, at the time of trial, an investigator with the Mississippi Highway Patrol; and that her nephew was currently serving as a Mississippi

highway patrolman. *Id.*

¶18. In *Cason*, the jury was asked whether anyone had spoken with them about the merits of the case. At a post-trial hearing the juror in question admitted that she had waited on the plaintiff at the shop where the juror worked and that the two had discussed the plaintiff's voice problems, a principal contention at trial. The majority in *Cason* did not address the ambiguity issue as it was apparent from the question asked and the knowledge of the juror that there was no ambiguity issue. *Cason*, 614 So.2d at 949.

¶19. The question asked by Everett -- "Are you or any member of your family, related to any police or law enforcement officer, Sheriff, or what have you?" -- is unambiguous as it relates to Sheriff's, police or law enforcement *officers*. Parker, however, was not related to any officer. Parker's daughter was a part-time dispatcher for the Newton Police Department. Given the common meaning of words and the duties associated with law enforcement officers versus dispatchers, it is clear that the question posed by Everett as it related to Parker was ambiguous. Furthermore, the "or what have you" portion of the question was a catch-all provision which does not cure the ambiguous nature of the question as it relates to Parker. *Tolbert v. State*, 511 So.2d 1368, 1377 (Miss. 1987). The judge did not abuse his discretion in finding the question to be ambiguous.

¶20. While one might argue that, regardless of the *Odom* test, prejudice against the defendant can be inferred from Parker's participation on the jury. Although a stretch, logic lends itself to the inference that Parker's daughter would be privy to certain information about the case which she might pass on to Parker, who in turn would pass such information on to the jury; or perhaps Parker had an unrevealed bias against criminal defendant Buckley due to her daughter's employment as a dispatcher with the Newton Police Department. Such speculation, however, is not the province of the Court in this instance. Whether prejudice can be inferred in the jury selection process due to Parker's silence is an inquiry this Court makes only after the *Odom* factors have been answered in the affirmative. *Odom*, 355 So.2d at 1383; *see generally Cason*, 614 So.2d at 949.

### IV. WHETHER BUCKLEY IS ENTITLED TO A NEW TRIAL DUE TO CUMULATIVE ERRORS.

¶21. As the only error found by this Court was harmless, Buckley was not denied a fair trial due to cumulative error. This issue is without merit.

### CONCLUSION

¶22. Based upon these reasons, this Court holds that the circuit judge did not abuse his discretion in denying Buckley's motions for a continuance, mistrial or new trial. Finding only harmless error as to Issue II, the judgment of the Circuit Court of Newton County is affirmed.

¶23. **CONVICTION OF MURDER, IN VIOLATION OF SECTION 97-3-19(1)(a), MISS. CODE OF 1972, AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., BANKS, P.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. Smith's murder occurred at approximately 3:27 p.m. on September 22, 1998.