768 So.2d 924 (2000)
Steve BALLARD a/k/a Steven Ballard, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00785-COA.
Court of Appeals of Mississippi.
March 21, 2000.
Rehearing Denied July 18, 2000.
Certiorari Denied October 5, 2000.
*925 Jim Waide, David Chandler, Victor Israel Fleitas, Tupelo, Martin D. Crump, Attorneys for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.
LEE, J., for the Court:
¶ 1. This criminal appeal is from the Circuit Court of Oktibbeha County where the defendant, Steven Ballard, was found guilty, after a trial by jury, of two counts of simple assault by pointing a gun at two law enforcement officers, Keith Davis of the Starkville Police Department and Leroy Boling of the Oktibbeha County Sheriff's Department. Ballard was sentenced to serve a term of three years in the MDOC on each count with two years suspended and one year to serve. These two sentences are to run concurrently. Ballard was acquitted of the offense of aggravated assault charged in the third count of the indictment.
¶ 2. Ballard asserts three assignments of error as the basis of his appeal: (1) that *926 the State's loss or destruction of allegedly probative evidence requires reversal, (2) that an expert witness's failure to include an explicit statement in his report that a criminal defendant could not, at the time of the offense, distinguish the difference between right and wrong, should not have precluded his testifying at trial that the defendant did not know right from wrong, and (3) that a psychiatrist should not have been allowed to give an opinion regarding whether the defendant could distinguish right from wrong absent proof of scientific studies demonstrating how a person having the defendant's mental characteristics would know the difference between right and wrong. Finding merit in Ballard's second assignment of error, we reverse and remand. The other assignments of error relating to the trial have been considered and, in our opinion, are without merit. To avoid prolixity, we do not encumber this opinion with comment thereon.

FACTS
¶ 3. The appellant, Steven Ballard, testified that after his wife had slapped him one night during a heated argument, he went to a local hospital to seek help because he felt that he was either going to kill himself or hurt somebody. Ballard, a resident of Starkville, Mississippi, had a history of severe depression, suicidal thoughts, and substance abuse. He testified that he told hospital personnel, "I'm a manic-depressant; I'm suicidal. Uh, I'm probably going to kill myself, you know, or... somebody's going down, something's going to happen.... I'm in bad shape. Please help me." After filling out his paperwork, a nurse told him to sit down and that someone would be right with him. Ballard said that he was the only person there and while he waited he noticed that the nurse had sat down, crossed her legs and was filing her fingernails. He testified that this made him mad and that he had never before been this mad. After deciding that no one cared whether he got help or not, he left the hospital, went home, got his son's 30/30 rifle and shells, and drove his truck around the city of Starkville.
¶ 4. Upon being alerted by a hospital employee, law enforcement officers from the county as well as the city of Starkville engaged in pursuit of Ballard. Ballard stopped his truck near the electric department, got out of his truck and, when told by the law enforcement officers to put his weapon down, challenged them to shoot him and fired his rifle into the air. Ballard then left the electric department and drove to Pat Station Road. Several officers converged on the scene where Ballard got out of his truck with his rifle. Officers Boling and Davis asked Ballard to put down the rifle but instead he fired into the air again. He put the rifle under his chin, threatened to kill himself, and told the officers that, having been to Viet Nam and Korea, he was not afraid to die.
¶ 5. Officer Davis testified that Ballard pointed the rifle at the officers and that he and Officer Boling took cover behind Boling's police car. Several more officers arrived at the scene, and Ballard invited them to shoot him. Ballard testified that he said to the officers, "[W]e'll go on three." On the count of three he raised his rifle. Officer Burton, a deputy sheriff, testified that Ballard was pointing the gun at Boling and Davis and that he was concerned that Ballard was going to shoot one of them. At this time Burton took careful aim with his police revolver and shot Ballard through the mouth. Burton testified that he intentionally aimed high in order to avoid hitting Davis.
¶ 6. Ballard, however, testified that the officers continuously kept him blinded by the lights of the police vehicles and that he was unable to point his rifle at them. He attributes his behavior to his depressed state, stating that he was out of control and that he had "snapped."

STANDARD OF REVIEW
¶ 7. Whether evidence is admissible is within the discretion of the trial *927 judge. Davis v. State, 684 So.2d 643, 661 (Miss.1996); Johnston v. State, 567 So.2d 237, 238 (Miss.1990). His decision will not be overturned on appeal unless it was an abuse of discretion. Davis, 684 So.2d at 661; Johnston, 567 So.2d at 238. The Court will not reverse the trial court's decision merely because of an erroneous evidentiary ruling. Newsom v. State, 629 So.2d 611, 614 (Miss.1993). The appellant must show that he was effectively denied a substantial right by the ruling before a reversal can be possible. Peterson v. State, 671 So.2d 647, 656 (Miss.1996); Newsom, 629 So.2d at 614. If a constitutional right has been violated, the case must be reversed unless the Court finds that the "error was harmless beyond a reasonable doubt" upon consideration of the entire record. Newsom, 629 So.2d at 614.
ISSUE

DOES AN EXPERT WITNESS'S FAILURE TO INCLUDE AN EXPLICIT STATEMENT IN HIS REPORT THAT A CRIMINAL DEFENDANT COULD NOT AT THE TIME OF THE OFFENSE DISTINGUISH BETWEEN RIGHT AND WRONG PRECLUDE HIS TESTIFYING AT TRIAL THAT THE DEFENDANT DID NOT KNOW RIGHT FROM WRONG?
¶ 8. Ballard, in asserting insanity as a defense, furnished a written eight page psychological evaluation into evidence by Dr. Joe Edward Morris, a clinical psychologist who had evaluated Ballard. The diagnosis made by Dr. Morris was "major depressive disorder with psychotic features." The summary of the report states:
The above observations, information, test results and history project the clinical picture of a 40-year-old white male who has a history of mood disorder, primarily depression with periodic bursts of psychotic material, including particularly paranoia. In fact, it is more probable than improbable that this is what occurred when he became distraught with his wife and bolted from the house with a gun presumably to take his own life. The sequence of events only serve to feed and exacerbate this temporary psychotic state sprung from his deep depression....
¶ 9. The State, on the grounds of failure to disclose, objected to any opinion from Dr. Morris that Ballard could not distinguish right from wrong on the day of the incident. The defense then made a proffer, and Morris testified that in his opinion Ballard did not know the nature and quality of his acts and did not know right from wrong at the time of the incident because he was in a psychotic state. During cross-examination by the State, Dr. Morris was asked if the language in the summary of his psychological evaluation was equal to that of his stated opinion in his proffered testimony. Though Morris answered that it was not the same thing but that it inferred the same thing, in the same breath he went on to state that he and the prosecutor were in a semantical quandary and that his report used the terms "psychotic behavior" and "break from reality" as opposed to the legal terms to which the Court referred as used in the M'Naghten definition for insanity. The M'Naghten test for criminal responsibility is stated as follows:
[T]o establish a defense on the ground of insanity, it must be clearly proved that at the time of committing the act the accused was laboring under such a defect of reason from disease of the mind as (1) not to know the nature and the quality of the act he was doing, or (2) if he did not know it that he did not know that he was doing what was wrong.
Laney v. State, 421 So.2d 1216, 1218 (Miss. 1982) (quoting from Harvey v. State, 207 So.2d 108, 111 (Miss.1968) (quoting M'Naghten's Case, 8 Eng. Rep. 718 (1843))).
¶ 10. The Court noted that an expert is not allowed to deviate from the contents of *928 his report without supplemental discovery prior to trial and stated that the report offered only a clinical diagnosis and did not offer the psychologist's opinion as to Ballard's ability to understand the nature of his actions and the difference between right and wrong on the day of the offense. It ultimately ruled that Dr. Morris would, therefore, not be permitted to testify as to Ballard's sanity or lack thereof on the day of the incident, even though defense counsel argued that there was no deviation from the contents of the report, and the report did refer to Ballard's mental state on the day of the incident. The Court's ruling hinged on the fact that Dr. Morris himself stated in his profert that an "inference" was necessary as a bridge from his report to his stated opinion.

DISCUSSION
¶ 11. We beg to differ with the ruling of the court for several reasons. First, we fail to see how the introduction of any testimony by Dr. Morris regarding M'Naghten insanity on behalf of Ballard would have resulted in "undue prejudice and an unfair surprise" to the State and, therefore, merit exclusion as required by URCCC 9.04. As the Mississippi Supreme Court has stated on numerous occasions, the purpose of Rule 9.04 is "to avoid unfair surprise to either the state or defendant at trial." Ghoston v. State, 645 So.2d 936, 939 (Miss.1994); Rogers v. State, 599 So.2d 930, 937 (Miss.1992); McCaine v. State, 591 So.2d 833, 836 (Miss.1991); Fuselier v. State, 468 So.2d 45, 56 (Miss.1985). The record clearly shows that Ballard's intent to utilize this report as the basis of his insanity defense came as no surprise to the State, for it was the State that brought the issue to the attention of the Court out of the presence of the jury and prior to Dr. Morris's having been called as a witness. Although it is evident that the report did not use the magic words for the M'Naghten test as adopted in Laney, 421 So.2d at 1218, it clearly notified to the State that it was Ballard's basis for his insanity defense. In addition, the State was fully prepared and presented its own expert witness who extensively discussed M'Naghten and testified unequivocally that Ballard knew right from wrong at the time of the incident and did not qualify under the test. With regard to a M'Naghten defense rebuttal, the State would not have been unfairly prejudiced by the excluded testimony.
¶ 12. Though we will not burden this opinion with extracts from the record which is replete with dialogue indicative of confusion on the issue, the record shows that the lengthy discourse regarding this matter during the proffer was ambiguous at best. Mississippi Rule of Evidence 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." M.R.E. 103(a); Hunt v. State, 687 So.2d 1154, 1164 (Miss.1996). To deny the defendant his substantial right to a fair trial on the basis of a ruling which ultimately turned on a matter of semantics would indeed be an injustice. Peterson, 671 So.2d at 656. The inference upon which the Court based its ruling was not one of substance but of form. In addition, we do not agree with the State that any error committed by the Court in precluding Ballard's expert from giving his opinion that Ballard did not know right from wrong on the day of the incident was harmless in light of the comprehensive testimony that the State elicited from its own expert in regard to this issue.

CONCLUSION
¶ 13. Reprehensible as the actions of the appellant were, causing great fear in law enforcement officers as well as placing their lives in danger, we will not permit them to stand in the way of his fundamental right to a fair trial. This Court will reverse a ruling only if the trial court has abused its discretion and if a substantial right of the party has been affected by the ruling on the evidentiary matter. Green v. State, 614 So.2d 926, 935 (Miss.1992); M.R.E. 103(a). If a constitutional right *929 has been violated, the case must be reversed unless the Court finds that the "error was harmless beyond a reasonable doubt" upon consideration of the entire record. Newsom, 629 So.2d at 614. It is our opinion that the defendant was unfairly prejudiced by this exclusion of this testimony. We, therefore, reverse and remand for a new trial.
¶ 14. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I AND COUNT II IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.