ON WRIT OF CERTIORARI

CHANDLER, Justice,
for the Court:
¶ 1. In 1987, Johnny Ray Magee was convicted of robbing a liquor store and sentenced to a term of life imprisonment as a habitual offender.[1] We affirmed his conviction in 1989[2] and dismissed his motion for post-conviction relief (“PCR”) in 1992. In 2010, however, we granted Ma-gee’s request to amend his PCR on the basis of his claim of newly discovered evidence of juror misconduct. The Marion County Circuit Court held an evidentiary hearing to consider this new evidence. The judge found that, when the prospective jurors were asked whether any of *66 them had family or close friends in law enforcement, a juror’s failure to disclose her belief that a local deputy sheriff was her fourth cousin did not amount to juror misconduct and did not prejudice jury selection. The Court of Appeals affirmed the circuit court’s denial of the amended PCR petition. We granted certiorari on the issues of whether the circuit court erred in finding no juror misconduct and whether the circuit court violated Rule 9.04 of the Uniform Rules of Circuit and County Court by allowing the last-minute testimony of a witness at the evidentiary hearing. We affirm the circuit court’s denial of post-conviction relief, holding that no juror misconduct occurred and that, even if a violation of Rule 9.04 occurred, the error was harmless and the issue was waived due to lack of a defense request for a continuance or mistrial.
FACTS
¶ 2. After serving more than twenty years of a life sentence without the possibility of parole, Johnny Ray Magee learned that Judy Ann Echols, a member of the jury that convicted him, was a somewhat distant cousin to the late Thomas Echols, the deputy sheriff who served Ma-gee his indictment and conducted his arrest.[3] During jury selection, Judy Ann did not respond to any of the following questions asked by Magee’s attorney:
(1)And these first few questions apply to you yourself, your family, and the people you consider to be your close friends. Are any of you or the other people that I have mentioned presently employed as any sort of law enforcement officer, whether it be local, state, or federal? Is anybody in that position at this time?
(2) What about in the past, has anybody in your experiences in life so far ever been employed in law enforcement personally? What about your family members or close friends in the past?
(3) Have you yourself or any of your close friends ever been members of any kind of law enforcement association such as the State Sheriffs Association or the National Rifle Association or any other group like that?
Two jurors responded that they had brothers-in-law in law enforcement. Both of those jurors were empaneled without objection from the defense.
¶ 3. When asked at the evidentiary hearing why she did not respond to these questions, Judy Ann answered that she did not understand the questions and was not sure how to conduct herself, as it was her first time in court. She stated she believed Thomas to be her fourth cousin. Thomas lived five minutes from Judy Ann and they attended the same church. She “knew of’ him but did not “know” him. She testified she had never discussed law enforcement matters with him. Judy Ann also “knew of’ both Magee and Thomas because all three were in close (but not the exact same) grades of school together growing up. Testimony from other family members was admitted to show Thomas was likely a closer degree of kinship to Judy Ann than fourth cousin, but in no case closer than a second cousin.[4]
¶4. Magee also testified at the eviden-tiary hearing. He learned about Judy Ann’s kinship to Thomas after Magee’s daughter married Judy Ann’s nephew. Magee claimed that Judy Ann told a prison-mate of his that Thomas had told her Magee was guilty. Magee also alleged he *67 called Judy Ann from prison to confront her, that she had admitted to talking with Thomas about the case before jury selection, but that she would not volunteer to testify because she did not want “to lose her freedom.” Magee did not question Judy Ann about this alleged conversation at the evidentiary hearing or put on any evidence to corroborate his hearsay assertions.
¶ 5. The State’s only witness was Cass Barnes, who had served with Judy Ann on the jury that convicted Magee. Barnes currently serves as the Chancery Clerk of Marion County. The State made a last-minute decision at the close of Magee’s witnesses to call Barnes to testify. Barnes was not subpoenaed to be present for the hearing. Over Magee’s objection, the judge called an hour and a half recess, during which the State arranged for Barnes to appear. The record does not explicitly reflect whether the defense interviewed Barnes during this recess. Barnes testified that, while he had a difficult time remembering a trial that happened so long ago, he did not remember any member of the jury making improper comments or referencing outside information. He stated that if he had, he would have reacted by informing the circuit judge.
DISCUSSION
¶ 6. We apply the “clearly erroneous” standard of review to a trial court’s finding that a jury was fair and impartial. “It is ... a judicial question as to whether a jury is fair and impartial and the court’s judgment will not be disturbed unless it appears clearly that it is wrong.” Odom v. State, 355 So.2d 1381, 1383 (Miss.1978). The same standard applies generally to denial of post-conviction relief after an evi-dentiary hearing. Johns v. State, 926 So.2d 188, 194 (Miss.2006).
I. THE TRIAL COURT DID NOT CLEARLY ERR IN APPLYING THE ODOM TEST.
¶ 7. Magee argues he is entitled to a new trial because Judy Ann’s failure to answer the voir dire questions had a prejudicial effect ón jury selection. Under Mississippi Code Section 13-5-69, a defendant has the right to question prospective jurors directly “with reference to challenges for cause, and for peremptory challenges.” Miss.Code Ann. § 13-5-65 (Rev. 2012). We have held that “[t]he failure of a juror to respond to a relevant, direct, and unambiguous question leaves the examining' attorney uninformed and unable to ask any follow-up questions to elicit the necessary facts to intelligently reach a decision to exercise a peremptory challenge or to challenge a juror for cause.” Odom, 355 So.2d at 1383.
¶ 8. When deciding on a motion for a new trial based on a juror’s failure to respond during voir dire, the trial court should first “determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited.” Odom, 355 So.2d at 1383. Second, “[i]f the trial court’s determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror’s failure to respond.” Id. The defendant deserves a new trial if such prejudice can be reasonably inferred. Id. We also emphasized in Odom that “no firm, unbending rule can be laid down that would control every situation that might arise on the voir dire of prospective jurors. Therefore, each case must be decided on an ad hoc basis considering the facts before the court.” Id.
*68 ¶ 9. Magee argues that the first step of the Odom test has been met, because the questions were relevant and unambiguous, and Judy Ann had “knowledge of the information sought to be elicited.” It is undisputed that the questions were relevant and unambiguous. At issue is whether Judy Ann’s knowledge that a somewhat distant cousin of hers was a local deputy sheriff can reasonably be considered within “the information sought to be elicited.” We hold that, in this circumstance, the degree of kinship was too distant for the juror to have been expected to respond.
¶ 10. Similar cases, where we have found the Odom test satisfied and ordered a new trial, involved a much closer degree of relation. In Odom, a juror failed to reveal that his brother was a law-enforcement officer. Odom, 355 So.2d at 1382. That brother turned out to be directly involved in the investigation of Odom’s case. Id. In Laney v. State, a juror failed to disclose that she had two brothers and a nephew in law enforcement. Laney v. State, 421 So.2d 1216, 1216-17 (Miss.1982). In that case, a death-penalty sentence was returned as punishment for the capital murder of a local law-enforcement officer. Here, as in those cases, the questions asked at voir dire focused on discovering whether jurors had “family and close friends” in law enforcement. But, unlike in those cases, Judy Ann’s kinship to Thomas was simply too distant to be reasonably considered within the scope of the questions, especially given that, in practicality, the two did not appear to have an ongoing friendship or any significant level of interaction.
¶ 11. Magee argues that the prejudice prong of the Odom test has been met, because we can reasonably infer he would have exercised a strike on Judy Ann had he known she was related to the arresting officer. The lawyer who defended Magee at trial submitted an affidavit for the evi-dentiary hearing, stating that, while he did not remember this case specifically, his general practice in a similar situation would be that:
[if a juror] had answered in the affirmative during voir dire that she was related by blood or marriage to a police officer involved in the investigation of the case, a challenge to the trial judge to strike her for cause and/or a peremptory strike, if any remained available to the defense during jury selection, would have been made to remove her from the venire panel.
In Laney, where a law-enforcement officer had been murdered, we found “the fact that [the juror] was related to three law enforcement officers would, under the circumstances, be a very crucial issue. Defense counsel would certainly have exercised a challenge to her service on the jury.” Laney, 421 So.2d at 1218 (emphasis added). And in Odom, as mentioned above, the juror’s brother was directly involved in the. investigation of the defendant. Odom, 355 So.2d at 1383.
¶ 12. Under the circumstances of this case, we cannot find that the trial judge clearly erred in concluding that Judy Ann would not have been struck as a juror had the defense known she was a somewhat distant cousin of the arresting officer. Two other jurors with brothers-in-law in law enforcement were selected for Magee’s jury without objection. The victim of the crime was not law enforcement. Thomas and- Judy Ann were significantly more distantly related than a brother, brother-in-law, or nephew. Not only did they not have a close relationship or talk about law-enforcement affairs, no evidence was presented at the hearing that Thomas had been involved in the substantive investigation of Magee’s case. Thomas’s role ap *69 parently was limited to serving the indictment and conducting the arrest.
¶ 13. We emphasize, as we originally did in Odom, that circumstances like these must be decided on a case-by-case basis. The degree of kinship, connection, and knowledge required to be present before prejudice can be inferred will vary depending on the facts of each case. Given both the constitutional right to be tried in the locale of the crime and the fact that many communities are small and close-knit, it is not unusual for jury members to have some level of connection with or knowledge of the case. See Dubose v. State, 22 So.3d 340 (Miss.Ct.App.2009); Archer v. State, 986 So.2d 951 (Miss.2008); Wright v. State, 9 So.3d 447 (Miss.Ct.App.2009). This is why attorneys follow up affirmative responses to voir dire questions by asking the juror if he or she can be impartial regardless of the connection or knowledge. Juries would be difficult to empanel otherwise.
¶ 14. We also clarify an aspect of the circuit court’s written findings on Odom after the evidentiary hearing. The court found Judy Ann did not have “substantial knowledge of the information sought to be elicited” in part because she did not “understand” the questions she was asked and was nervous and confused about how to conduct herself in court. But a juror’s nervousness, failure to understand the voir dire questions, or confusion about the process cannot be grounds for denying a defendant the right to non prejudicial jury selection. The important question is whether prejudice in jury selection occurred as a result of the failure to respond, and prejudice potentially can occur regardless of a juror’s reason for remaining silent.
II. THE ADMISSION OF A LAST-MINUTE WITNESS AT THE EV-IDENTIARY HEARING DID NOT RESULT IN A MISCARRIAGE OF JUSTICE.
¶ 15. Magee argues he is entitled to a new trial[5] because the judge allowed a last-minute witness to testify at the post-conviction-relief hearing in violation of Rule 9.04(I)(l)-(2) of the Uniform Rules of Circuit and County Court, which states:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
URCCC 9.04(I)(l)-(2). At the close of Magee’s witnesses, the record reflects the following exchange:
THE COURT: The State wants to call the Chancery Clerk of Marion County, Cass Barnes, who I understand is going *70 to a time prior to him being Chancery-Clerk. He was actually a member of the jury that tried this particular case, and would have knowledge of any impropriety in the jury room. And the State has talked to and I guess it’s safe to say the State feels like the State needs to go into any possible contamination with the jury deliberations.
MR. SWEATT [PROSECUTOR]: He would honestly tell us, assuming he remembers, if there was any. I think he would remember if there were tainting. He might not remember.
THE COURT: Well, whatever. All right.
MR. KUYKENDALL [DEFENSE COUNSEL]: Your Honor, for the record I object. We’re here today and had an opportunity to subpoena him and have him here for this morning for hearing. He’s not here now and we’d object to any continuance.
THE COURT: Since we’re here to try to find out what the truth of the matter is, I’ll overrule the objection and we’ll just recess until 1:15 ... Are you going to call Mr. Barnes to have him here at 1:15?
MR. SWEATT: Yes, sir.
THE COURT: We’ll be ready at that time....
(COURT PLACED IN RECESS AT 12:08 P.M. OFF RECORD)
(PROCEEDINGS CONTINUE AS FOLLOWS AT 1:41 P.M.)
¶ 16. The record does not explicitly reflect whether the defense had a reasonable opportunity to interview Barnes during this recess as required by Rule 9.04(I)(1) or whether proceedings resumed without such an interview taking place. Proceedings resumed at 1:41 p.m. with the State directly examining Barnes. At that time, the defense did not claim unfair surprise or undue prejudice and seek a continuance or mistrial as required under Rule 9.04(I)(2). Magee’s cross-examination of Barnes very effectively highlighted the vagueness of Barnes’s memory of the trial.
¶ 17. We have stated that “[a] violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.” Ben v. State, 95 So.3d 1236, 1249 (Miss.2012) (quoting Payton v. State, 897 So.2d 921, 942 (Miss.2003)); see also Ross v. State, 954 So.2d 968, 1000-01 (Miss.2007) (stating that the key question is whether the violation of Rule 9.04 prejudiced the defendant). Additionally, failure to request a continuance or mistrial when faced with an undisclosed witness or evidence results in waiver of the rule violation. See Comby v. State, 901 So.2d 1282 (Miss.Ct.App.2004), cert. denied, 901 So.2d 1273 (Miss.2005); Jackson v. State, 910 So.2d 658 (Miss.Ct.App.2005).
¶ 18. While not irrelevant, Barnes’s testimony was in no way disposi-tive of the outcome of the hearing. An Odom analysis focuses on the defendant’s right to be free from prejudice at jury selection. Prejudice warranting reversal can occur at voir dire even without additional evidence of overt misconduct at trial. Our decision, like the trial court’s, is based primarily on the relatively distant degree of kinship and interaction between the juror and the law-enforcement officer, as well as the fact that the law enforcement officer was only tangentially involved with Magee’s case. Even if the court violated Rule 9.04 by not allowing sufficient opportunity for the defense to interview the new witness, Barnes’s testimony about what occurred at trial did not result in a miscarriage of justice and is not grounds for ordering a new evidentiary hearing. Moreover, Magee waived the issue by failing to request a continuance or mistrial.
*71 CONCLUSION
¶ 19. Under the factual circumstances present here, we cannot find that the trial judge clearly erred in holding that no juror misconduct occurred. The distant degree of kinship and the attenuated level of interaction between Judy Ann and Thomas place their relationship outside the scope of the particular voir dire questions asked. The trial court did not clearly err in finding Magee was not prejudiced by Judy Ann’s failure to disclose her kinship to Thomas. If the trial court violated Rule 9.04, the result was harmless error. Ma-gee also waived the issue. We therefore affirm the judgment of the Court of Appeals as well as the trial court’s denial of Magee’s amended motion for post-conviction relief.
¶ 20. AFFIRMED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.

. See Miss.Code Ann. § 99-19-83 (Rev.2007).

. See Magee v. State, 542 So.2d 228 (Miss.1989).

. Thomas Echols passed away some time before the instant proceedings.

. The testimony was that Judy Ann's father and Thomas’s father were first cousins.

. The appropriate relief actually would be a new evidentiary hearing, rather than reversal of Magee’s original conviction.