## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2022-KA-00577-COA

**JAMES KELLY A/K/A JAMES WALTER KELLY A/K/A JAMES WALTER KELLY, JR.**                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                     **APPELLEE**

DATE OF JUDGMENT:                  12/13/2021
TRIAL JUDGE:                       HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:         NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:            OFFICE OF STATE PUBLIC DEFENDER
                                   BY: ZAKIA BUTLER CHAMBERLAIN
ATTORNEY FOR APPELLEE:             OFFICE OF THE ATTORNEY GENERAL
                                   BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:                 STEVEN SIMEON KILGORE
NATURE OF THE CASE:                CRIMINAL - FELONY
DISPOSITION:                       AFFIRMED - 08/22/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     A Neshoba County jury convicted James Kelly of capital murder for the kidnapping and death of Demarquis Houston. The Neshoba County Circuit Court sentenced Kelly to life imprisonment without eligibility for parole in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Kelly argues the circuit court erred by denying his motion for a new trial based on juror misconduct. Finding no error, we affirm Kelly's conviction and sentence.

### FACTS

¶2.     In October 2019, law enforcement received a missing-person report on Houston. In

December 2019, investigators began to treat Houston's disappearance as a likely homicide. Investigators learned about a conflict between Houston and Kelly. They also learned that Kelly had been wearing an ankle monitor around the time of Houston's disappearance. After obtaining a subpoena for Kelly's ankle-monitor records, investigators began to ascertain whether Kelly had been in the same vicinity as Houston's last known location. In addition to determining Kelly's whereabouts around the time of Houston's disappearance, investigators established a Crime Stoppers tip line and interviewed several persons of interest related to the case. Information obtained from these investigative efforts pointed toward Kelly as the main suspect involved in Houston's disappearance. Based on the evidence they had collected, investigators arrested Kelly and charged him with capital murder. Following Kelly's arrest, investigators recovered Houston's body from the bottom of a pond.

¶3. During voir dire for Kelly's trial, the circuit court asked whether any potential juror was related to Houston by blood or marriage. None of the potential jurors, including Corsha Hickman, indicated a relationship to Houston by blood or marriage. Hickman was later selected as a juror for Kelly's trial. Before proceedings began on the second day of trial, Hickman reported of her own volition that one of Kelly's family members had sent her a message via Facebook. The message alleged, without providing any supporting details, that Hickman was related to Houston. The message further stated that despite the purported familial connection between Hickman and Houston, the sender hoped Hickman would make a good decision with regard to the outcome in Kelly's trial.

¶4. Outside the jury's presence, the circuit judge informed the parties of the development

and stated that he had questioned Hickman, who had denied any familial connection with Houston. Based on his conversation with Hickman, the circuit judge stated that he "ha[d] no question that [Hickman] remain[ed] fair and impartial" and "that she wanted nothing else but for this case to be decided in a fair manner." In the parties' presence, the circuit judge questioned Hickman for a second time to put his prior discussion with her on the record. Neither party objected to the circuit judge's ruling regarding the matter, and after the circuit judge finished questioning Hickman on the record, both parties indicated that they were satisfied with the proceeding.

¶5.    Kelly's trial continued, and following their deliberations, the jurors found Kelly guilty of capital murder for his involvement in Houston's kidnapping and death. The circuit court sentenced Kelly to life imprisonment without eligibility for parole in MDOC's custody. Kelly filed a post-trial motion, which the circuit court treated as a motion for a new trial. In his motion for a new trial, Kelly asserted that Hickman was Houston's first cousin by marriage but had failed to disclose the familial connection. To support his claims, Kelly attached to his motion several exhibits, including screenshots of Facebook posts, a diagram purporting to show a familial connection between Hickman and Houston, and results from an online background and genealogy search. The circuit court denied Kelly's motion. Aggrieved, Kelly appeals.

## DISCUSSION

¶6.    Kelly contends that Hickman misrepresented her familial connection with Houston and that the circuit court therefore erred by denying his motion for a new trial. We review

3

for clear error "a trial court's finding that a jury was fair and impartial." *Watts v. State*, 350 So. 3d 613, 617 (¶19) (Miss. 2022) (quoting *Magee v. State*, 124 So. 3d 64, 67 (¶6) (Miss. 2013)). "It is a judicial question as to whether a jury is fair and impartial[,] and the court's judgment will not be disturbed unless it appears clearly that it is wrong." *Id.* at 618 (¶19) (quoting *Magee*, 124 So. 3d at 67 (¶6)). As we have previously explained, "when a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for [a] challenge for cause, the trial court must grant a new trial." *Jasper v. State*, 302 So. 3d 682, 688 (¶24) (Miss. Ct. App. 2020) (quoting *Johnson v. State*, 224 So. 3d 549, 552 (¶11) (Miss. Ct. App. 2017)).

¶7.     To address Kelly's argument on appeal, we apply the test established by the Mississippi Supreme Court in *Odom v. State*, 355 So. 2d 1381 (Miss. 1978). Under the first part of the *Odom* test,

> [i]f a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited.

*Odom*, 355 So. 2d at 1383.

¶8.     The second part of the *Odom* test applies in the following circumstances:

> [I]f the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. The failure of a juror to respond to a relevant, direct, and unambiguous question leaves the

4

examining attorney uninformed and unable to ask any follow-up questions to elicit the necessary facts to intelligently reach a decision to exercise a peremptory challenge or to challenge a juror for cause.

Where a party shows that a juror withheld substantial information or misrepresented material facts, and where a full and complete response would have provided a valid basis for challenge for cause we presume prejudice. This Court has held that a defendant bears the burden of showing he was prejudiced by the jury selected or that the jury was biased or less than impartial.

*Jasper*, 302 So. 3d at 688 (¶¶25-26) (citations and internal quotation marks omitted).

¶9.     Here, the parties raise no dispute that the question of whether Hickman was related by blood or marriage to Houston was both relevant and unambiguous.  Even so, the State argues that Kelly's claim fails to satisfy the first part of the *Odom* test.  Upon review, we agree.

¶10.    Kelly's contention that Hickman and Houston were related by blood or marriage fails due to a lack of credible evidentiary support.  In response to the circuit judge's questioning, Hickman avowed that she did not have a familial connection with Houston.  And Kelly never provided any credible or admissible evidence to contradict Hickman's testimony.  Instead, as the State notes, Kelly's motion exhibits only included "unauthenticated" screenshots of Facebook posts, "unverified" background and genealogical searches from "undisclosed" databases, and a "self-drafted" diagram that depicted a purported, rather than substantiated, familial connection between Hickman and Houston.  Kelly's supporting exhibits contained no affidavits or other admissible evidence to establish the truth of his allegation regarding a familial connection between Hickman and Houston. Moreover, even if Kelly had managed to sufficiently support his claim that Hickman was related by blood or marriage to Houston,

he still failed to establish that Hickman "had substantial knowledge of the information sought to be elicited" but withheld the information. *Odom*, 355 So. 2d at 1383. We therefore conclude from our review of this issue that Kelly failed to satisfy the first prong of the *Odom* test regarding his allegation of juror misconduct.

## CONCLUSION

¶11. Because we find no error in the circuit court's order denying Kelly's motion for a new trial based on juror misconduct, we affirm Kelly's conviction and sentence.

¶12. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**